## Dodge and others vs. Williams and another, Executors, etc., and others.

BEQUESTS TO CHARITABLE USES. (1) Duty of courts in regard to them. (2, 3) Not regulated here by statute. (4) Bequest or devise? (5) What constitutes a charitable use. (6) When scheme of charity sufficiently certain. (7) When power of selecting beneficiaries is in trustee. (8–10) Certain college charters held to authorize the trustees to take the bequests in question. (11) By what law wills are governed. (12) Power conferred by ch. 297 of 1873, upon certain institutions to take under the will. (13) Cases distinguished. (14) Bequests liberally construed. Valid though made to nonexistent corporation. (15) Power of court to appoint trustee. (16) Valid bequest over. (17) COSTS on contest of will.

1. While it is the duty of courts to carefully weigh objections made against charitable bequests, and give effect to any which are sufficient to render the bequests void in law, it is also their duty to uphold such bequests where it can be done without violating any provision of statute or principle of law.

2. The English statutes of mortmain did not extend to the English colonies in America, and have never been in force in Wisconsin.

Dodge and others vs. Williams and another, Executors, etc., and others.

3. Our statutes prohibiting perpetuities and regulating uses and trusts (R. S. 1858, chs. 83, 84) are expressly limited to *realty:* and the English doctrine as to perpetuity as applicable to personalty was thus abrogated. But *it seems* that the doctrine was not applied to trusts for charitable uses.

4. When a will contains a power of sale not mandatory in terms, but it is apparent (as in this case) from the general scope and tenor of the will, that the testator intended all his realty to be sold, the power of sale will be held imperative, and equity will deal with the estate as personal from the death of the testator.

5. A bequest of moneys to be used "in the education and tuition of worthy indigent females," is a bequest to a charitable use.

6. When such bequests are to specified institutions of learning already ;in existence, and to a fourth institution of like character to be thereafter organized, they must be construed to mean such an education as such institutions usually give; and the scheme of the charity is sufficiently certain to support the bequests.

7. Where the founder of a public charity does not provide a rule or order of selection of beneficiaries, there is a necessary power of selecting in the trustee.

8. A provision in a college charter that the corporation shall accept and execute every donation or bequest made for a particular purpose *which accords with the design of the institution* (that design being education), *held* sufficient to enable the college to take the charitable bequest made to it by the will in this case, for the education of a class of persons.

9. A provision in a college charter authorizing the corporation to acquire, hold and dispose of real and personal property, *for the benefit of the college,* not exceeding a certain value, and to make by-laws for conducting the business of the corporation, authorized it to receive a charitable bequest for the education of a class of persons defined in the will; it being for the corporation to determine whether the bequest was for the benefit of the college.

10. A provision in a college charter authorizing the corporation to see that every donation or bequest made to the institution be applied in conformity to the conditions on which the same is made, gives authority to *administer* charitable bequests, and carries with it power to *receive* them.

11. As a general rule, a will is governed by the law in force *at the time it takes effect.*

12. Ch. 297 of 1873, which took effect before the will, gives to all incorporated colleges in this state express power to receive donations and manage them for the uses for which they are given. *Held,* that this authorizes the institutions named in the will (which are colleges of this state), to execute the trusts created by the will, even if their original charters did

Dodge and others vs. Williams and another, Executors, etc., and others.

not confer such authority. [And perhaps this statute operated to repeal, as to the corporations therein designated, all previous provisions having effect to limit trusts for charitable uses.]

13. The cases of *Ruth v. Oberbrunner*, 40 Wis., 238, and *Heiss v. Murphey*, id., 276, distinguished from this case.

14. The fourth bequest provided for the payment of moneys, at the end of five years, to "an institution of learning" of a certain character, to be "organized" in a certain city before the end of that period. *Held*,

   (1) That the terms "institution" and "organized" appear to contemplate an *incorporated* college; and the court is bound to give the language that construction to support the charitable use.

   (2) That the fact that the corporation there designated was not then *in esse*, did not render such fourth bequest void.

[15. *It seems* that courts of equity will not suffer a trust for a charitable use to lapse for want of a trustee *in esse*, but, in the exercise of their ordinary jurisdiction, will appoint a trustee, and will order the heir or legal representative to hold the fund upon the declared trust, until trustees can be appointed.]

[16. *It seems*, also, that if the bequest to the nonexisting corporation had failed for want of a trustee, a bequest over to the three existing corporations for the same charitable use would have been valid.]

17. The action of the plaintiffs in bringing suit to contest the will, and appealing to this court, being reasonable in view of the gravity of the questions involved, then undecided in this state, the taxable costs of both parties in both courts should be paid out of the trust fund.

APPEAL from the Circuit Court for *Dodge* County.

On or about the 1st of July, 1873, Rufus Dodge died, testate, in the city of Beaver Dam in this state, being a resident of said city. His will, after certain bequests not important here, devised and bequeathed all the residue of his estate, real and personal, to George H. Stewart, *John J. Williams* and *A. Scott Sloan*, "to have and to hold the same to them, and the survivor of them, and the executor, administrator and assigns of said survivor," in trust for certain purposes, which are thus defined: "To hold, manage, invest and improve the same at their discretion for and during five years after my decease, and, each and every year, out of the proceeds and income of said residue, to pay to the trustees of the Wisconsin Female College at Fox Lake, Ripon College at Ripon, and

Dodge and others vs. Williams and another, Executors, etc., and others.

Beloit College at Beloit, each the interest on the sum of five thousand dollars; and the remainder of the proceeds of said residue to reinvest to the best advantage in the discretion of the persons above named, and at the end of five years from and after my decease, to pay and deliver to the trustees of the institutions above named, to each and every of them the full sum of five thousand dollars, to have and to hold the same to the said institutions and their respective successors and assigns, in trust, however, for the following uses and purposes, namely: to hold, manage and invest the same, and the annual income thereof to apply and use for the education and tuition of worthy indigent females; excepting, however, and I hereby direct, that the sum to be paid to Beloit College may, until said college shall provide for the education of females, be used and applied for the education and tuition and support of worthy indigent young men studying and attending at said Beloit College, for the ministry; and this provision and exception shall apply and govern as well the interest to be paid to said institutions by my said trustees, as the interest of the sum to be paid to the trustees of said institutions at the end of five years after my decease. It being my will and intention that all sums so given and paid to said institutions of learning shall never go into the general fund, or be applied for the general purposes of said institutions respectively, but shall forever be sacredly held, used and applied for the education and tuition of worthy indigent females, with the exception and qualification above provided as to Beloit College. . . . And as to the residue of my said estate which may be in the hands of my said trustees at the expiration of five years from my decease, the same shall be upon the following trusts, viz.: If, at the expiration of said five years, there shall be organized at the city of Beaver Dam an institution of learning for the education and training of females, of a character and organization commonly called and known as a female seminary, and to be devoted exclusively to the education, tuition and training

of females in such branches, arts and departments as are usually taught in female academies and seminaries, and such institution shall have, at the end of said five years, *bona fide* subscriptions, pledges, bequests or cash to the amount of $20,-000, paid, subscribed, donated or pledged to the maintenance and support of such a female school in the city of Beaver Dam (my said trustees to be sole judges whether said $20,000 is so paid, pledged, subscribed or donated), then my said trustees shall pay over and deliver to the trustees of said female school all the rest and residue of my said estate, to be by said trustees of said school held and applied, and the annual income of said residue to be used for the education and tuition of worthy, indigent females in said female school; and if at the end of said five years such school shall not be organized, or shall not have the said sum of $20,000 as above provided for, then my said trustees shall pay and deliver all the rest, residue and remainder of said estate to the trustees of said Wisconsin Female College, Ripon College and Beloit College, in equal parts, share and share alike, to be by the trustees of said institutions respectively held, used and applied as herein above directed." . . . The will then nominated the trustees before named, George H. Stewart, *John J. Williams* and *A. Scott Sloan,* as executors, and authorized them to sell and convey any and all real estate of the testator, and to execute conveyances thereof, in their discretion.

The will was duly admitted to probate, and letters testamentary issued to *John J. Williams* and *A. Scott Sloan* (George H. Stewart refusing to accept the trust); and said executors reduced all the real estate to money, paid all the specific legacies, debts, etc., and paid annually the interest on $5,000 to each of the three colleges named in the will; and when this action was tried, they had in their possession money and choses in action, belonging to said estate, exceeding in value $25,000.

Some time, apparently, in 1876 or 1877, the heirs-at-law of

said testator brought this action, to which said *Williams* and *Sloan* as executors and trustees, the attorney general of this state, and the several colleges named in the will, were made defendants. After setting forth the facts, and alleging certain advice of counsel thereon, and the refusal of the executors to apply to the court for a construction of the will, they asked the court to determine whether any part of the will, as to any of the bequests, was void "for uncertainty of the devisees or beneficiaries thereof," or "as being for a charitable use or trust not recognized or upheld under the laws of this state," or "as being in contravention of the statute of perpetuities," or "because of uncertainty as to the beneficiaries therein named, or as to the manner or rule for ascertaining the same," or "because the alleged trust is not fully expressed or clearly defined upon the face of the said will," or "as being in trust for an unincorporated body;" whether the bequest in trust for a female seminary to be organized within five years from the decease of the testator is not void "as being to an association not in being, and with no provision for its being incorporated or authorized to receive or hold property;" and whether, if said last named bequest is void, the provision for paying the residue of the testator's property, included therein, equally to the three colleges previously named, is not also void.

The executors and the three colleges named in the will answered. The court found the facts substantially as above stated, and held the will valid in all its provisions. From a judgment in accordance with these determinations, the plaintiffs appealed.

For the appellants, there were briefs signed by *E. P. Smith* and *J. J. Dick* as their attorneys, with *F. W. Cotzhausen* and *G. W. Hazelton*, of counsel, and oral argument by *Mr. Smith* and *Mr. Dick*. They contended, in substance, 1. That the will reposes a special trust and confidence in the three persons named as trustees, and confers a discretion to be exercised by

the three, and not by a less number, except in the event of the death of one or more of them; and that the refusal of one of them to serve was fatal to the trust. *Beekman v. Bonsor*, 23 N. Y., 302; *Fontain v. Ravenel*, 17 How., U. S., 369; R. S. 1858, ch. 35, sec. 39. 2. That a disposition of property which contravenes the law against perpetuities, is invalid at the common law, whether the property be real or personal (1 Jarman on Wills, 4th Am. ed., 262; *Levy v. Levy*, 33 N. Y., 128-9); and that our statute on the subject should be held equally applicable to both kinds of property *(Chipman v. Montgomery*, 4 Hun, 739; *Campbell v. Foster*, 35 N. Y., 366, 371-2; *Graff v. Bonnett*, 31 id., 9-13, opinion of HoGEBOOM, J.); that charitable donations form no exception to the law against perpetuities, at least *while they remain contingent and executory;* and that the period of five years, during which the temporary trustees are directed to hold the property in this case, may involve more than two lives in being at the creation of the estate. *Rose v. Rose*, 4 Abb. Ct. of App., 111. 3. That the three colleges named in the will can take nothing under it, for lack of corporate power to do so. Counsel cited the charter of Beloit College, Laws of 1846, p. 103; that of the Wisconsin Female College, P. & L. Laws of 1855, ch. 16; and that of Ripon College, P. & L. Laws of 1855, ch. 40, amended by P. & L. Laws of 1864, ch. 220; and contended that the education of "worthy indigent females," as a distinct class separate from all others, and out of a fund which can be applied to no other use, but which, by the terms of the will, must be kept forever distinct from their general funds, is foreign to the purposes of those institutions as defined in their charters; and that, in the absence of any express provision authorizing them to hold and apply this property for the peculiar purpose named in the will, no such power can fairly be implied, not being necessary to, but rather inconsistent with, the purposes for which the institutions were created. *Robertson v. Bullions*, 11 N. Y., 252. They also contended that, if the

charters of those colleges originally gave them power to take in perpetuity, they were so far repealed by the statute of uses and trusts. R. S. 1858, ch. 84. 4. That at least no *devise of real property in trust* is valid in this state, unless authorized by the statute of uses and trusts, ch. 85, R. S. 1858; that express trusts can be created only for some one of the purposes enumerated in sec. 11 of that chapter; that the trusts attempted to be created by the will here in question cannot be sustained under that section, unless they come within the fifth subdivision, which authorizes an express trust "for the beneficial interest of any person or persons, when such trust is *fully expressed and clearly defined* upon the face of the instrument creating it, *subject to the limitations as to time* prescribed in this title;" and that the trusts here do not comply with these conditions. 5. That where, as here, the testamentary provision operates on a *mixed fund*, composed of the testator's realty and personalty inseparably blended together in one common fund, the whole is affected by the statute. Note to *Moggridge v. Thackwell*, 1 Ves., 466. 6. That the trust declared in the will, considered as one affecting personalty only, and independently of the statute just mentioned, is bad for uncertainty. (1) The doctrine of *cy pres*, by which the English chancery, in the exercise, not of judicial power, but of a branch of the royal prerogative, undertook to administer charitable devises in the absence of a proper trustee or defined charitable purpose, has no existence in this country. *Fontain v. Ravenel*, 17 How., U. S., 369. (2) The statute of 43 Elizabeth, relating to charitable trusts, was not declaratory of the common law as it previously existed in England. *Levy v. Levy*, 33 N. Y., 107; *Bascom v. Albertson*, 34 id., 602–3; *Holmes v. Mead*, 52 id., 338; *Bapt. Association v. Hart's Executors*, 4 Wheat., 1; *Fontain v. Ravenel, supra;* 1 Spence's Eq. Jur., 587. (3) That statute has never been any part of the law of Wisconsin. The laws of the United States passed in 1810 for the government of the terri-

tory of Michigan, and incorporated in 1833 into the revised statutes of that territory, abolished in terms all acts of the parliament of England, or the parliament of Great Britain (Cass's Code, 119; Laws of Mich. of 1820, p. 460; R. S. of Mich. of 1833, p. 563; *Trask v. Green*, 9 Mich., 365; *Ready v. Kearsley*, 14 id., 224); sec. 12 of the organic act establishing the territorial government of Wisconsin, approved in April, 1836 (R. S. 1858, p. 1076), extended the then existing laws of the territory of Michigan over the Wisconsin territory; and the constitution of this state, when adopted, merely recognized such parts of the common law as were then in force in the territory. Const. of Wis., art. XIV, sec. 13. The whole spirit and tendency of our free institutions, indeed, is hostile to unlimited donations and grants for superstitious, pious or so-called charitable uses, which are easily perverted to the most pernicious abuses *(Bascom v. Albertson*, 34 N. Y., 601); and while the legislature has from time to time made such provision as it thought desirable, "through the medium of corporate bodies created by legislative power," for inviting and encouraging contributions for the benefit of the unfortunate, the poor and the unenlightened, yet in every case the nature of the charity to be encouraged has been specified, the amount of the benefaction limited, and the corporation subjected to legislative control. If the statute of Elizabeth had been regarded as still in force, or the common law broad enough to provide for all these charities, and "adapted to our political situation and circumstances," such legislation would have been useless. *Levy v. Levy*, 33 N. Y., 116, 117. (4) Where a testamentary provision is made for a charitable use, it is void (in the absence of the *cy pres* power) if the scheme of the charity, and the manner of disposition of the property, are not so clearly defined in the will, that the court can, by decree, in the exercise of its proper equity powers, carry out and administer the trusts. Perry on Trusts, §§ 719–723; *Stubbs v. Sargon*, 2 Keen, 255;

*Wheeler v. Smith*, 9 How., U. S., 55; *Barker v. Wood*, 9 Mass., 419; *Greene v. Dennis*, 6 Conn., 293; *Williams v. Williams*, 4 Seld., 547; *Levy v. Levy*, 33 N. Y., 103, 121; *Kelley v. Kelley*, 25 Pa. St., 460; *McLean v. Wade*, 41 id., 266; *Lepage v. McNamara*, 5 Iowa, 133. (5) The devises or bequests to the three colleges are therefore void, because the beneficiaries, "worthy indigent females," are not definitely ascertained, nor is any method appointed for ascertaining them, and because the persons charged with the execution of the trust are an uncertain body, unknown to the law. *Chittenden v. Chittenden*, 1 Am. Law Reg., O. S., 538; *Bascom v. Albertson*, 34 N. Y., 584; *Levy v. Levy*, 33 id., 97. (6) The devise to the female seminary thereafter to be organized at Beaver Dam must be regarded as one to an *unincorporated* association to be formed in the future, and as such is void. *Baptist Association v. Hart's Ex'rs*, 4 Wheat., 1; *Downing v. Marshall*, 23 N. Y., 381; *Beekman v. Bonsor*, id., 300; *Bascom v. Albertson*, 34 id., 586; *Owens v. Missionary Society*, 14 id., 385; *Holmes v. Mead*, 52 id., 332; *Rose v. Rose*, 4 Abbott's Ct. of Appeals, 108. The will in this respect cannot be aided by construing it with reference to ch. 55, Laws of 1858 (R. S. 1858, pp. 485-6): *(a)* Because that statute in effect makes an institution organized under it a joint stock company, with power to sell, or otherwise dispose of, its property, real and personal, at pleasure; and a devise in perpetuity would be wholly ineffectual in the hands of such a corporation. *(b)* Because the statute of 1858 was superseded and impliedly repealed by ch. 146 of 1872, which is a revision of the whole subject matter. *Norris v. Crocker*, 13 How., U. S., 429. Nor is the will to be construed in the light of ch. 146 of 1872, and the amending act, ch. 297 of 1873: *(a)* Because this will was made in August, 1871, and, as to its subject matter and the meaning of its words, speaks from its date. *Kockran v. Kockran*, 14 Sim., 248; *Van Vechten v. Van Veghten*, 8 Paige, 116; *Van Alstyne v. Van Alstyne*, 28 N.

Y., 377; 1 Jarman on Wills, \*278; Wigram on Wills, 160. *(b')* Because, in case of a corporation formed under this act, a majority of the members may dissolve it, dispose of all its property, and, after payment of its indebtedness, divide the residue (secs. 5, 6); and a devise in perpetuity to such a corporation would be wholly ineffectual. Even if a trust in mere personalty for a volunteer association may be valid where there is a trustee competent to take and distribute, and where the trust is so well defined as to be capable of specific execution by the court, still the provision here is void. *(a)* There is no indication how or by whom said seminary shall be organized, but its organization is left wholly to the volunteer act of persons unknown, and for whose ascertainment no way is provided; and such persons are left to make their own scheme and impose such character upon the institution as they may deem fit. *(b)* In case of the resignation or nonacceptance of one of the three trustees named in the will, it is impossible to determine whether, at the expiration of five years, the fund shall be paid over to any female seminary at Beaver Dam. The trust to determine that fact is personal to the said trustees, and cannot be delegated. A judicial decree could not execute such a trust, nor could the executors or assigns of the trustee. 23 N. Y., 298–303. "When a power is vested in several persons, *all must unite in its execution;* but if, previous to such execution, one or more of such persons shall die, the power may be executed by the survivor or survivors." 23 N. Y., 305, 312, 336, and cases cited; Perry on Trusts, 287, 408; Lewin on Trusts, 262–266. *(c) Sloan* and *Williams* are not trustees for the perpetual application of the fund designed for this future seminary; and how can the court determine who shall be? In this as in other respects, the will should be so definite that the court, on failure of the present trustees to pay over the fund, can determine just who has a right to receive, and who has a right to enforce its payment. Suppose this seminary organized, and no trustee: could the court

appoint? How could it frame the necessary decree, when the bequest is for an uncertain beneficiary? *Levy v. Levy* and *Downing v. Marshall, supra.* Where there is a certain donee or beneficiary, whom the law will recognize, there may be a valid trust though no trustees are named (2 Story's Eq. Jur., §§ 904, 964); but here there is no one for whom the court can decree performance. Jarman on Wills; *Bonsor v. Beekman,* 23 N. Y., 306; *Baptist Association v. Hart's Executors, supra; Phelps' Ex'r v. Pond,* 23 N. Y., 77; 34 id., 384. *(d)* As to the uncertainty of the beneficiaries, counsel further cited *Grimes' Ex'rs v. Harmon,* 35 Ind., 205; *Lepage v. McNamara,* 5 Iowa, 124–145; *Rose v. Rose,* 4 Abb. Ct. of App., 111; *Wheeler v. Smith,* 9 How., U. S., 55; *Wills v. Cowper,* 2 Ohio, 124; *Kelley v. Kelley,* 25 Pa. St., 460; *Zeisweiss v. James,* 63 id., 465; *Trippe v. Frazier,* 4 Har. & J., 446; *Dashiell v. Att'y Gen.,* 5 id., 392; *Wilderman v. Baltimore,* 8 Md., 557; *Gallego's Ex'rs v. Att'y Gen.,* 3 Leigh, 450; *Sanderson v. White,* 18 Pick., 333; *Miller v. Teachout,* 24 Ohio St., 525. It is said that a legacy to a charitable corporation with general directions to use it in the education of a class, confers a discretionary power to select the particular beneficiaries. But no case in this country can be found, where a simple devise to an institution yet to be founded, without plan or direction as to its formation or the regulation of the fund, was sustained. The cardinal principle is, that the testator must say who shall organize, and how the charity must be directed. We must distinguish between a direct devise to a corporation uncoupled with a trust, and a devise in perpetuity for a specific charitable object. In the former, the property is absolutely that of the corporation, unfettered by any special rule or limit. In the latter case, it holds only as trustee for the beneficiaries indicated in the will; and the trust must be so expressed that the donor's intent may be distinctly and fully read therein. In none of the leading cases cited for the respondents did the donor rest satisfied with

stating an object in the most general terms, and then devising the fund in terms as general, to any organization that might thereafter be formed for educational purposes. In every case, either the trustees were named by the donor with *express* power to act and administer, or the plan or scheme was furnished in all its details. Such are the cases of *Inglis v. Sailors' Snug Harbor*, 3 Peters, 99; *Vidal v. Girard's Ex'rs*, 2 How., U. S., 129, 133–183; *Ould v. Washington Hospital*, 5 Otto, 303; *Sanderson v. White*, 18 Pick., 328. 7. That if the devise to said future seminary at Beaver Dam is void, the fund does not go to the three colleges, but to the heirs. (1) The gift over to the three colleges is, strictly speaking, *an executory devise*. *Burrill v. Boardman*, 43 N. Y., 257; *The Proprietors, etc., v. Grant, etc.*, 3 Gray, 148, 157; 9 Ves., 535–9; 2 Redfield on Wills, 270. If the trust for the benefit of the future seminary was illegal, no estate as to that part of the property vested in *Williams, Sloan* and Stewart. The only contingency provided by the will itself, upon which the fund is to go to the three colleges, is this: that the three trustees shall take and hold and foster the fund for five years in trust for a seminary to be organized in that time, and that such seminary shall fail of being organized, or shall fail of procuring a certain endowment; and no provision is made for the contingency that the first disposition of this fund shall be found *invalid*. The law "will not presume that the testator intended to provide for the contingency of invalidity, unless he so distinctly states it." *Chipman v. Montgomery*, 4 Hun, 750, 751. See also *Rose v. Rose*, 4 Abbott's Ct. of App., 113 et seq.; 2 Redf. on Wills, 206. In all cases which we have been able to examine, in which gifts over have been sustained when the primary gifts to charity have failed for illegality, the contingency of the primary gift being held void was anticipated, and was explicitly made the ground of the gift over. *De Themmines v. De Bonneval*, 5 Russ., 288; *Sibley v. Perry*, 7 Ves., 522; *Carter v. Green*, 3 K. & J., 591; *Warren v.*

*Rudall*, 4 id., 603; *Fisk v. Att'y Gen.*, L. R., 4 Eq. Cas., 521. Such an expression would exclude all construction. 2 Redf., 244, pl. 50. But the court may not speculate upon what the testator probably would have done had he known that the devise was void. 6 Paige, 612; *Leonard v. Burr*, 18 N. Y., 100; *Pickering v. Langdon*, 22 Me., 428–9; *Chapman v. Brown*, 3 Burr., 1634; *Doo v. Brabant*, 4 Durnf. & E., 706. (2) The three colleges are not residuary legatees taking on the lapse of a primary devise. A lapsed devise is one valid at the date of the will, and failing by reason of some subsequent event; but this is a *void* devise, null from the beginning. 15 Am. R., 701. So, too, a residuary legatee is the devisee of all that part of the property other than the residue, of which no effectual disposition is made by the will. *Skrymsher v. Northcote*, 1 Swanst., 570. In this case, after the personal legacies, there is but one residue; the disposition of $15,000 to the three colleges exhausted a portion of it; the future seminary was primarily to receive the balance; and the contingent provision therefor is but a secondary disposition of such balance, *i. e.*, of the *residue of a residue*. Both the primary and secondary disposition of this portion of the residue being wholly ineffectual for the illegality of the former, the fund goes to the heirs as not being disposed of by the will. *Skrymsher v. Northcote, supra*, citing Ward on Legacies, 32; *Attorney Gen. v. Davies*, 9 Ves., 538; *Floyd v. Barker*, 1 Paige, 480; *Bonsor v. Beekman*, 23 N. Y., 312; *Phelps' Ex'r v. Pond*, id., 69; *Bagwell v. Dry*, 1 P. Wms., 700; *Page v. Page*, 2 id., 489; *Cheslyn v. Cresswell*, 3 Bro. P. C., 246; *Leake v. Robinson*, 2 Mer., 363–92; *Fontain v. Ravenel*, 17 How., U. S., 391. See, also, *Att'y Gen. v. Tyndall*, 2 Eden, 207; *Att'y Gen. v. Hodgson*, 15 Sim., 146; *Philpott v. St. George's Hospital*, 21 Beav., 134. 8. That the action, being for the construction of a will where the estate rests wholly in personalty, is properly brought by the heirs-at-law. Perry on Trusts, 1st ed., p. 682, § 782; *Studholme v. Hodgson*, 3 P.

Wms., 300; *Bowers v. Smith*, 10 Paige, 193–200; *Rose v. Rose*, 4 Abb. Ct. of App., 111; *Kiah v. Grenier*, 56 N. Y., 220; *In re N. Y. Mail Steamship*, 3 B'k'tcy Reg., 627. The objection cannot be raised after the answer. *Tucker v. Tucker*, 1 Selden, 409; *Chipman v. Montgomery*, 4 Hun, 742; *Tenney v. State Bank*, 20 Wis., 152; *Peck v. School District*, 21 id., 522.    9. That in any event the costs in this case, including reasonable costs as between solicitor and client, should be paid out of the fund.    1 Redf. on Wills, 2d ed., 493, sec. 36, pl. 3, and note; 2 id., 556, sec. 82; Perry on Trusts, § 895; *Grimwood v. Cozens*, 5 Jurist, N. S., 497; 9 H. L. Cas., 420; *Morrell v. Dickey*, 1 Johns. Ch., 153; *Rogers v. Ross*, 4 id., 608; *Drew v. Wakefield*, 54 Me., 291; *Abbott v. Bradstreet*, 3 Allen, 587; *Re Downie's Will*, 42 Wis., 66, 77; *Jackman Will Case*, 26 id., 364.

*Smith & Lamb*, for the respondents, contended, 1. That heirs-at-law or others claiming *in hostility* to the will have never been allowed to maintain a suit for its construction.    1. Redfield on Wills, 442, 492, sec. 10; *Bigelow v. Morong*, 103 Mass., 287; *Dane v. Walker*, 109 id., 179; *Onderdonk v. Mott*, 34 Barb., 106; *Woodruff v. Cook*, 47 id., 304; *Walrath v. Handy*, 24 How. Pr., 352; *Brown v. Ricketts*, 3 Johns. Ch., 553; *Bailey v. Southwick*, 6 Lans., 362; *Chipman v. Montgomery*, 63 N. Y., 221; *Bailey v. Briggs*, 56 id., 407; *Hubbell v. Lerch*, 58 id., 237; *Heywood v. Buffalo*, 14 id., 540; *Bowers v. Smith*, 10 Paige, 193; *Collins v. Collins*, 19 Ohio St., 468.    See also *Rose v. Rose*, 28 N. Y., 184; *Post v. Hover*, 33 id., 602.    2. That the legacy to Beloit College is valid.    (1) Its charter, approved February 2, 1846, confers on it the usual powers of such institutions, including the power "to acquire, hold and convey property, real and personal" (sec. 1), and declares that " the board of trustees shall faithfully apply all funds by them collected or received according to their best judgment," etc.: " provided, nevertheless, that in case any donation or bequest be made for particular purposes,

which accord with the designs of the institution, the corporation shall receive and accept the same. Every donation or bequest thus made shall be applied in conformity to the conditions or designs expressed by the donor." This language *at least* authorizes the creation of uses and trusts as to *personal property* given to the college. This charter was continued in force by sec. 2, art. XIV of the state constitution. It was in strict accordance with the common law in regard to charities and charitable uses and trusts; and the common law on that subject was the law of Wisconsin, until the revision of 1849 took effect. Constitution, art. XIV, sec. 13; *Coburn v. Harvey*, 18 Wis., 147; *Conn. Mut. Ins. Co. v. Cross*, id., 109; *Spaulding v. Railway Co.*, 30 id., 110; *Vidal v. Girard's Executors*, 2 How., U. S., 127. It would seem that a devise or bequest for charitable uses was valid in Wisconsin, independently of 43 Eliz., c. 4, and that after the act of congress, approved April 20, 1836, for establishing the territorial government, by which (sec. 9) a supreme court and district courts were established and invested with "chancery as well as common-law jurisdiction," charitable uses and trusts were enforceable in equity in Wisconsin, the same as they had been in England, both before and after the statute of Elizabeth. The law seems to be settled that the statute was "purely remedial and ancillary," and neither increased nor diminished the preëxisting jurisdiction in equity. *Ould v. Washington Hospital*, 95 U. S., 303, 310. But ch. 57, R. S. 1849 (ch. 84, R. S. 1858), which was in substance the statute of uses, 27 Henry VIII, c. 10, abolished all trust estates in real property except those therein expressly authorized. That chapter, however, as well as the statute against perpetuities, are parts of title XV, which treats exclusively "of real property and of the nature, qualities and alienation of estates therein;" and there is no statute of this state which changes the common law of charitable uses and trusts in respect to personal property. It will not be assumed that the legislature intended to

make any innovation upon the common law further than the case absolutely required; nor will that law be held repealed or changed by implication. Potter's Dwarris, 184, 185, and cases in note 7; *Heydon's Case*, 3 Rep., 7; Plowden, 205; *Att'y Gen. v. Brown*, 1 Wis., 513; *Meek v. Pierce*, 19 id., 303; *Orton v. Noonan*, 29 id., 545. Our statute of uses and trusts was adopted from New York, where it has uniformly been held not to apply to personal property. *Williams v. Williams*, 8 N. Y., 524; *Owens v. Missionary Society*, 14 id., 380; *Trustees, etc., v. Kellogg*, 16 id., 83; *Beekman v. Bonsor*, 23 id., 298; *Mead v. Holmes*, 52 id., 344–5. See also Perry on Trusts, § 6; O'Hara on Construction of Wills, 397. Moreover no provision of the Beloit College charter has been expressly repealed, and the revision of the general statutes will not be held to have worked such repeal. *Walworth County v. Whitewater*, 17 Wis., 193, 196; *City of Janesville v. Markoe*, 18 id., 350; Dwarris on Stats., ed. of 1846, 532; id., Potter's ed., 110; *Williams v. Pritchard*, 4 Term, 2, 4. And the immense number of charters to educational and other institutions granted since the revisions of 1849 and 1858, containing provisions similar to sec. 5 of the Beloit charter, show that the legislature did not intend, by those revisions, to deprive Beloit College of the powers granted by that section. [In support of this view, counsel cited a large number of charters granted between 1852 and 1871.] After the constitutional amendment of 1871 forbidding the enactment of special laws granting corporate power except to cities, private corporations for educational, charitable and other purposes were authorized by general law (ch. 146 of 1872), and their trustees were empowered "for the benefit of the corporation, to receive donations of money or property, by way of endowment or otherwise, for the maintenance of the institution under their care, and to invest, reinvest, collect and manage the same for the uses for which such donations were severally made." Ch. 297 of 1873. These acts may be said

each to be a repeal *pro tanto* of the statute of uses and trusts (2 Redfield, 515); and together they show a settled purpose to confine the abolition of uses and trusts, and of perpetuities, to those of a personal or private character, and to restore the common law of charities, at least as to educational institutions and benevolent societies. (2) The bequest is not invalid for uncertainty of the beneficiaries. The language of the will designates the beneficiaries with clearness and certainty within the rules in such cases. O'Hara on Construction of Wills, 395; Perry on Trusts, §§ 66, 616, 698, 699, 710; 2 Redfield on Wills, 402; *Waller v. Childs*, Amb., 524; *Bennett v. Hayter*, 2 Beav., 81; *Inglis v. Sailors' Snug Harbor*, 3 Pet., 99, 112–120; *Perin v. Carey*, 24 How., U. S., 467, 500–509; *Fontain v. Ravenel*, 17 id., 369, 384; *Ould v. Washington Hospital*, 95 U. S., 303; *Treat's Appeal*, 30 Conn., 113; *Chambers v. St. Louis*, 29 Mo., 543; *Williams v. Williams*, 8 N. Y., 533; *Owens v. Missionary Society*, 14 id., 380–403; *Downing v. Marshall*, 23 id., 366; *In re Taylor Orphan Asylum*, 36 Wis., 534; *Heiss v. Murphey*, 40 id., 291. A devise of this kind to an incorporated institution implies that its officers shall select the particular beneficiaries *(McCord v. Ochiltree*, 8 Blackf., 15); and the charter of Beloit College makes it the duty of the trustees not only to receive the bequest but to apply it " in conformity to the conditions or designs expressed by the donor." So ch. 297 of 1873 provides that the board of trustees of each institution there mentioned shall have power to *manage* the donations made to it " for the uses for which such donations are severally made." There being a sufficient and legal mode of rendering certain the final beneficiaries, the objection for uncertainty will not lie. Perry on Trusts, §§ 731, 732; 2 Redf. on Wills, 535; *McLain v. School Directors*, 51 Pa. St., 196; *Zeisweiss v. James*, 63 id., 465; *Inglis v. Sailors' Snug Harbor*, *Vidal v. Girard's Ex'rs*, *Perin v. Carey*, and *Ould v. Washington Hospital*, *supra*. (3) The bequest is not invalid as being in perpetuity. The common-

law rule against perpetuities does not apply to bequests for charitable uses. 1 Black. Com., 475; Perry on Trusts, §§ 384, 736; O'Hara on Wills, 401; 2 Redf. on Wills, 546; *White v. White*, 7 Ves., 423; *Isaac v. De Friez*, 17 id., 373, n; *Att'y Gen. v. Price*, id., 371; *Burley v. Evelyn*, 16 Sim., 290; *Tregonwell v. Sydenham*, 3 Dow, 194; *Ould v. Washington Hospital*, 95 U. S., 313; *Odell v. Odell*, 10 Allen, 1; *Shotwell v. Mott*, 2 Sandf. Ch., 46; *Williams v. Williams*, 8 N. Y., 525; *Philadelphia v. Girard*, 45 Pa. St., 1; *State v. Gerard*, 2 Ired. Eq., 210. The statute of this state against perpetuities (R. S. 1858, ch. 83) does not apply to personal property. The New York statutes prohibit perpetuities in regard to personal as well as in regard to real estate (1 R. S. of N. Y., p. 773); and the decisions in that state must be construed with reference to that fact. 3. That the legacies to Ripon College and the Wisconsin Female College stand in substantially the same position as that to Beloit College. Ch. 40, P. & L. Laws of 1855, amended by ch. 220, P. &. L. Laws of 1864; ch. 16, P. & L. Laws of 1855, amended by ch. 31, P. & L. Laws of 1861; ch. 297 of 1873. 4. That the provision of the will relating to a female seminary at Beaver Dam is valid. The words "organized" and "organization" are peculiarly appropriate to an incorporated institution. Besides, the institution is to be endowed, and is to be capable of holding the bequest in perpetuity. Clearly, therefore, the testator intended a corporation. Ch. 55, Laws of 1858, which was in force when the will was made and is still in force, provides for the organization of seminaries, etc., with trustees to be elected by the stockholders with power to receive gifts, devises, bequests, etc., "which shall be faithfully applied by the trustees to carry out the objects thereof." Ch. 297 of 1873 was also in force when the will took effect. The testator must be held to have known these laws, to have made his will with reference to them, and to have intended a seminary incorporated under them. Co. Litt., 42 a b; 1 Redfield, 433-4; Wilmot's Opinions, 298;

*Atkinson v. Hutchinson*, 3 P. Wms., 260; *Thellusson v. Woodford*, 4 Ves., 312; *Grover v. Wakeman*, 11 Wend., 193; *Butler v. Butler*, 3 Barb. Ch., 310; *Griffen v. Ford*, 1 Bosw., 123; *DuBois v. Ray*, 35 N. Y., 162, 171. The fact that the corporation was not then in existence, does not render the bequest invalid; the property being vested in the trustees named, in trust to pay it over on fulfillment of the condition. *In re Taylor Orphan Asylum*, 36 Wis., 534. See also A. &. A. on Corp., § 184; *Porter's Case*, 1 Rep., 24; *Case of Sutton Hospital*, 10 id., 32; *Att'y Gen. v. Bowyer*, 3 Ves., 714; *Preachers' Aid Society v. Rich*, 45 Me., 552; *Swasey v. Am. Bible Society*, 57 id., 523; *Sanderson v. White*, 18 Pick., 328; *Coggeshall v. Pelton*, 7 Johns. Ch., 292; *Burrill v. Boardman*, 43 N. Y., 254; *Zimmerman v. Anders*, 6 Watts & S., 218; *Inglis v. Sailors' Snug Harbor*, 3 Peters, 99, 142, 149; *Vidal v. Girard's Ex'rs*, 2 How., U. S., 127; *Ould v. Washington Hospital*, 95 U. S., 303, 314. 5. That if the bequest to the seminary at Beaver Dam was void in its inception, there was a valid bequest over to the three colleges. The testator's intent is the cardinal rule in the construction of wills; and there can be no doubt that the testator intended, if the proposed seminary could not take the residue of his estate, that it should go to the three colleges for educational purposes; and if the contingency upon which they were to receive it happened for a reason which the testator did not contemplate at the time, that will not prevent the court from giving effect to his intention. *Murray v. Jones*, 2 Ves. & Bea., 313; *Meadows v. Parry*, 1 id., 124; *Avelyn v. Ward*, 1 Ves. Sr., 420; *Jones v. Westcomb*, 1 Eq. Abr., 245, pl. 10; *Gulliver v. Wickett*, 1 Wilson, 105; *DeThemmines v. De Bonneval*, 5 Russ., 298; *Robinson v. Robinson*, 19 Beav., 494; *Brock v. Bradley*, 33 id., 670; *Carter v. Green*, 3 Kay J., 591; *Warren v. Rudall*, 4 id., 603; *Hall v. Warren*, 9 H. L. Cas., 420; Theobald on Wills, 334. The American decisions are in full accord with the English doctrine on this

point. *Thorndike v. Loring*, 15 Gray, 391; *King v. Wood-hull*, 3 Edw. Ch., 79; *Robertson v. Caw*, 3 Barb., 410; *Banks v. Phelan*, 4 id., 80; *Hull v. Hull*, 24 N. Y., 647; *Simpson v. King*, 11 Ired., 377; *Taylor v. Lucas*, 4 Hawks, 215; *Adams v. Gillespie*, 2 Jones' Eq., 244; *Holderby v. Walker*, 3 id., 46; *Breithaupt v. Bauskett*, 1 Rich. Eq., 465; *Vick v. McDaniel*, 3 How. (Miss.), 337; *Hamberlin v. Terry*, 1 Sm. & Marsh. Ch., 589; *Gore v. Stevens*, 1 Dana, 201.   6. That the neglect or refusal of one of the three trustees to act devolves the trust on the others.   3 Redf. on Wills, 611–12; Perry on Trusts, §§ 259, 273, 276; *Crewe v. Dicken*, 4 Ves., 100; *Adams v. Taunton*, 5 Mad., 435; *Cooke v. Crawford*, 13 Sim., 96; *Browell v. Reed*, 1 Hare, 434; *Peppercorn v. Wayman*, 5 DeG. & Sm., 230.   Moreover the circuit court has power to control, remove or supply trustees (R. S. 1858, ch. 84, secs. 24–27); and the duties devolved on the trustees under this will do not involve the exercise of any peculiar discretion.   *Hull v. Hull*, 24 N. Y., 652.

*A. Scott Sloan* and *J. Downer*, on the same side.

The following opinion was filed January 14, 1879:

RYAN, C. J.   "Every sane man must be allowed to make his own contract as well as his own will," says GIBSON, C. J. That great jurist plainly suggests that courts have no more authority to make wills for the dead, than contracts for the living, according to judicial notions of fitness and propriety. *Bash v. Bash*, 9 Pa. St., 260.   Breaking a will is very much like making one; imposing upon the testator the statutes of descent and distribution against his solemn wish in dying. Perhaps courts have been quite too willing to do so.   There is a vicious notion prevalent that any will not acceptable to the testator's next of kin may be broken in the courts upon very frivolous grounds.   But every one should have the same power to dispose, by will, after his death, in accordance with his own wishes, of whatever he may leave behind him in his

own sole right, as he had in life to dispose of it by contract or by gift. And it is as much the duty of courts to uphold and enforce his will after death, as to uphold and enforce his contracts made during life.

Of course, devises and bequests as well as contracts may be void upon many grounds. But it is the policy of the law not to seek grounds to avoid either; but so to deal with both, if it can be done upon sound legal construction, as to uphold and enforce them.

In some of its aspects, this cause appears almost to have been argued as if it were the duty of the court to lean against bequests for charitable uses, in favor of claimants under the statutes of distributions. From time immemorial the general inclination of courts of equity has been the other way. " Charity in thought, speech and deed challenges the admiration and affection of mankind. Christianity teaches it as its crowning grace and glory. . . . Charitable bequests are said to come within that department of human affairs where the maxim *ut res magis valeat quam pereat* has been and should be applied." " Courts look with favor upon all such donations, and endeavor to carry them into effect, if it can be done consistently with the rules of law. . . . As Lord HARDWICKE said, 'the bequest is not void, and there is no authority to construe it to be void, if by law it can possibly be made good,' or, in other words, 'there is no authority to construe it to be void by law, if it can possibly be made good.' " Perry on Trusts, secs. 687, 709.

And so it is the duty of this court to uphold the charitable bequests of the will in this case, if it can be done without violating any provision of statute or principle of law. But, at the same time, it is the duty of the court carefully to weigh the objections made against the bequests, and to give effect to any sufficient to render the bequests void in law.

After the payment of certain specific legacies in money, the testator gives the residue of his estate, real and personal, to

Dodge and others vs. Williams and another, Executors, etc., and others.

his executors, upon trust to pay it over to four institutions of learning, in the proportions and manner directed by the will, for a specified charitable use. Some of the objections made are common to all the bequests; some are confined to one. These will be considered in their order.

The argument was learned and able on both sides, and a great number of cases were cited on a subject which has been prolific of litigation. All the cases cited, and others, have been carefully considered; but it would be impracticable, without extending this opinion beyond reasonable limit, to review them all in detail. It is thought sufficient to give the conclusions of the court derived from them all, with occasional reference to some of them more directly in point.

I. Many charitable bequests have been defeated in the English courts under the statute of mortmain, 9 George II, c. 36; and some reliance appeared to be placed on the position that the bequests in this case were void under that statute. That statute has never been adopted or in force here.

The last clause of the English statute excepts from its operation estates, real and personal, in Scotland; and it appears not to have extended to Ireland. *Attorney General v. Power*, 1 Ball and B., 145. It seems to have been a matter of some doubt how far the English statute could be held to have extra-territorial application. *Campbell v. Radnor*, 1 Brown's C. C., 271; *Oliphant v. Hendrie*, id., 571; *Curtis v. Hutton*, 14 Vesey, 537; *Mackintosh v. Townsend*, 16 Vesey, 330; *Attorney General v. Mill*, 3 Russell, 328; *Baker v. Sutton*, 1 Keen, 224. But it does not appear ever to have been held to be in force in any of the British colonies.

The question of the applicability of the statute of mortmain to the British colonies appears to have been first considered in *Attorney General v. Stewart*, 2 Merivale, 143. Sir William GRANT quotes and approves the language of Blackstone as " in a great degree applicable to any colony to which the laws of England may be extended." " It hath been held, that if an

uninhabited country be discovered and planted by English subjects, all the English laws then in being, which are the birthright of every subject, are immediately there in force. But this must be understood with very many and very great restrictions. Such colonists carry with them only so much of the English law as is applicable to their own situation and the condition of an infant colony." He then proceeds to consider the particular question, holding, for the reasons which he assigns, that the English statute of mortmain constituted no part of the law of the colony in question. "Whether the statute of mortmain be in force in the island of Grenada, will, as it seems to me, depend on this consideration — whether it be a law of local policy adapted solely to the country in which it was made, or a general regulation of property equally applicable to any country in which it is by the rules of English law that property is governed. I conceive that the object of the statute of mortmain was wholly political — that it grew out of local circumstances, and was meant to have merely a local operation. It was passed to prevent what was deemed a public mischief, and not to regulate, as between ancestor and heir, the power of devising, or to prescribe, as between grantor and grantee, the forms of alienation. It is incidentally only, and with reference to a particular object, that the exercise of the owner's dominion over his property is abridged.

"It is true that the disherison of lawful heirs is recited as one of the consequences of the unlimited power of devising to charitable uses, and heirs may consequentially be benefited by the prohibition. But generally to restrain the power of devising was not in the contemplation of the legislature. Heirs are as liable as before to be disinherited by will, provided the disherison be not in favor of the prescribed object. The thing to be provided was a mischief existing in *England;* and it was by the quality and extent of the mischief as it there existed, that the propriety of legislative interference

upon the subject was to be determined.   The statute begins by referring to the ancient laws made against alienations in mortmain.   None of the causes in which those laws originated had ever had an existence in the colonies.   It then recites that this public mischief had of late greatly increased.   There is locality in that assertion.   It was in *England* that the mischief had increased, and in *England* only was it thought necessary to impede its progress.   To no other part of the dominions of the crown was this law extended.   Yet it was competent to the legislature to have made it the law of every colony belonging to *Great Britain*.   I do not believe that it could even now be stated with respect to any of our colonies, that the practice of devising lands to charitable uses has prevailed to any inconvenient extent.   In *Jamaica*, the wealthiest of our *West Indian* possessions, it has not to this day been thought necessary to guard against any such evil.   I do not indeed know that any colonial legislature has made any regulation on the subject, although in none of the old colonies can the mortmain act have any operation.   For a long series of years, devises to charitable uses had in this country been wholly unrestrained; and, until they began to grow excessive in their amount, it was not reckoned necessary to restrain them.   What the legislature had to consider was, whether, as there was so much of the land of *England* already in mortmain, it was not expedient to lessen the facility of putting more of it into that situation.   That was a consideration purely local.   It related to land in *England*, and to land in *England* only.   The statute contains some exceptions.   These exceptions are also local, and still further show the local nature of the law, and how little it can be considered as a general regulation of property."   This case was approved and followed by the Lords Justices in *Whicker v. Hume*, 1 De Gex., M. & G., 506, affirmed in the House of Lords, 7 H. of L. Cases, 124.

   When this state was part of a vast wilderness, and all prop-

erty, real and personal, was in the Indian tribes or in the British Crown, the statute of mortmain was not merely inapplicable, but had no possible office to fulfill.

If the English statute of mortmain was not in force in Wisconsin while it was part of or appendant to an English colony, it seems very certain that it has never since had any force here. See the Michigan statute of 1810, R. S. of Michigan of 1833, p. 563; R. S. of 1839, p. 407. See, also, *Odell v. Odell*, 10 Allen, 1; *Perin v. Carey*, 24 Howard, 465.

All that has been said of 9 George II, c. 36, applies equally to 39 and 40 George III, c. 98, known as the Thellusson Act.

The poor we have always with us. When charitable bequests in this state begin to outrun reasonable provision for the poor, and seriously impede the alienation of property, it will be time enough for a statute of mortmain. The silence of the legislature hitherto, and the observation of all men, are sufficient to show that the time has not yet come, if it ever should.

II. Strenuous objections to the charitable bequests in the will before the court, were founded on the statutes prohibiting perpetuities, and regulating uses and trusts. Chaps. 83 and 84, R. S. of 1858. It is almost sufficient to say, for the purposes of this case, that both of these statutes are expressly limited to realty.

The English doctrine of perpetuities applied to estates both real and personal, and grew up by a series of judicial decisions. Perry on Trusts, secs. 377, 379. It appears to have been applied to private trusts, but not to trusts for charitable uses, which usually are essentially and indefinitely permanent. Perry, secs. 384, 687, 736.

"The rule of public policy which forbids estates to be indefinitely inalienable in the hands of individuals, does not apply to charities. These, being established for objects of public, general and lasting benefit, are allowed by the law to be as permanent as any human institution can be, and courts

will readily infer an intention in the donor that they should be perpetual. 1 Spence on Eq., 588; *Mayor, etc., of Bristol v. Whitson*, Dwight's Charity Cases, 171; *Magdalen College v. Attorney General*, 6 H. L. Cas., 205; *Perin v. Carey*, 24 How., 465; *King v. Parker*, 9 Cush., 82; *Dexter v. Gardner*, 7 Allen, 246. If an alienation of the estate becomes essential to the beneficial administration of the charity, it may be authorized by a court of chancery. Tudor on Charitable Trusts, 298, and cases cited; *Shotwell v. Mott*, 2 Sandf. Ch., 55; *Wells v. Heath*, 10 Gray, 27." *Odell v. Odell*, 10 Allen, 1; *Ould v. Washington Hospital*, 5 Otto, 303.

But were this otherwise, the statute limiting the rule against perpetuities to realty, manifestly abrogates the English doctrine as applicable to personalty. *Expressio unius exclusio alterius.*

The will in this case gave to the executors, as executors, power of sale of the testator's realty. The direction to the executors, as trustees, is to *pay and deliver the sum of five thousand dollars* each, to the Wisconsin Female College, the Ripon College and the Beloit College, for a common, specific, charitable use. These are expressly bequests of money. The will subsequently emphasizes this, by speaking of the bequests as sums given·and paid, and prohibiting their being mixed with the general fund of any of the colleges. The will then proceeds to direct the trustees to *pay over and deliver* the residue of the estate to an institution of learning to be organized at Beaver Dam, for the like charitable use. Failing the organization of the Beaver Dam institution as specified in the will, the trustees are directed to *pay and deliver* the residue in equal proportions to the three former institutions, to be used and applied as therein above directed; plainly meaning the direction given for the use of the bequests of five thousand dollars each. If and when the residue should be paid and delivered to the three former institutions, it would plainly come within the direction already noticed for the use of "all

sums so given and paid to said institutions," not to be mixed with the general fund. This plainly contemplates the conversion of all the testator's realty into personalty by his executors; the trust to be executed in personalty exclusively. The words, pay and deliver, are, by every rule of construction, used throughout the will in the same sense, and are applicable to personalty only. The word *convey* is used but once in the will, in the power of sale given to the executors. The manifest construction of the will is, that it was the intention of the testator that his executors should convert all his realty, and execute his bequests in personalty only.

When a will contains a power of sale, not mandatory in terms, but it is apparent, from the general scope and tenor of the will, that the testator intended all his realty to be sold, the power of sale will be held imperative, and the doctrine of equitable conversion applied. Courts of equity will deal with the estate as personal from the death of the testator. *Chandler's Appeal*, 34 Wis., 505; *Dodge v. Pond*, 23 N. Y., 69; *Craig v. Leslie*, 3 Wheaton, 563.

The bequests in this will must therefore be considered as bequests of personalty only. And for that reason, if for no other, the bequests to charitable uses are unaffected by the statute of perpetuities or the statute of uses and trusts.

It is not unworthy of remark, that, however the statute of perpetuities, or the statute of uses of 1858, might have affected grants or devises of realty for charitable uses, all doubt is removed by sections 2039 and 2081 of the late revision, which most properly make exceptions in favor of charitable uses.

It is proper to say in this connection, that a statute of New York, 1 Revised Statutes, 773, applies the doctrine of perpetuities to personal estate, without exception in favor of charitable uses. This renders New York cases on this point inapplicable here. *Levy v. Levy*, 33 N. Y., 97.

III. The charitable use of the bequests is the education

and tuition of worthy indigent females. This is clearly within the terms of the statute of 43 Elizabeth, c. 4, and of all the definitions of all courts thence hitherto.

It was contended that the bequests are void on the ground that the scheme of the charity is uncertain. It is difficult to see how it could be safely made more certain. As to the three institutions existing when the will was made, sums of money are given to go as far as they may to the education of poor females, plainly signifying such education as other females receive in those institutions. And so of the contemplated institution; the education provided for is such as is usually given in other similar institutions.

Public charities, indefinite in terms, are necessarily limited in their administration by the amount of the foundation. Where the founder does not provide a rule or order of selection, there is, therefore, in every public charity, a necessary power of selection of beneficiaries in the trustee. If the power be abused, the state, in the exercise of its visitatorial power, will correct it. *Re Taylor Orphan Asylum*, 36 Wis., 534; Perry on Trusts, sec. 732.

It was objected that the beneficiaries of this charity are uncertain. A charitable use is essentially shifting. When a trust defines the beneficiaries with certainty, it is rather private than public. As Mr. Perry remarks, charity begins where uncertainty of the beneficiaries begins. Sec. 687. "It is no charity to give to a friend. In the books it is said that the thing given becomes a charity where the uncertainty of the recipients begins. This is beautifully illustrated in the Jewish law, which required the sheaf to be left in the field for the needy and passing stranger." *Fontain v. Ravenel*, 17 Howard, 369. "It is the number and indefiniteness of the objects, and not the mode of relieving them, which is the essential element of a charity. . . . A good charitable use is 'public,' not in the sense that it must be executed openly and in

public; but in the sense of being so general and indefinite in its objects as be deemed of common and public benefit." *Saltonstall v. Sanders*, 11 Allen, 446.

It was objected that the charters of the three institutions existing when the will was made, give no power to execute such a trust. The charters do not quite appear to verify the objection. But ch. 297 of 1873, which took effect before the will, appears to remove all difficulty on this point, by giving to all incorporated colleges in the state express power to receive donations and manage the same for the uses for which they are given; thus authorizing them all to act as trustees for charitable uses. And this statute perhaps operated to repeal, as to the corporations designated, all previous provisions having effect to limit trusts for charitable uses.

IV. These views are believed to be supported by nearly all the English cases not controlled by the statute of mortmain, and by the very general current of American cases on the subject. It might be difficult, perhaps, to reconcile all the cases upon common principles, yet the difference is, perhaps, generally rather in the application of rules of decision, than in the rules themselves. The greatest divergence from the common principle appears to be in some of the later cases in New York, which seem to be more or less in conflict with rules almost universally recognized elsewhere. Perhaps this may suggest a policy in that state against the increase of public charities, somewhat indicated also by the sweeping statute against perpetuities of personalty, without exception in favor of charitable uses, and by the adoption of a limited statute of mortmain. 4 Edmunds' N. Y. Statutes, 504. A great number of English and American cases in support of the views held to govern this case, are cited in the briefs of counsel, and need not be referred to here. Others are cited by Mr. Perry.

There are some passing remarks to be found in *Ruth v. Oberbrunner*, 40 Wis., 238, and *Heiss v. Murphey*, id., 276,

apparently more or less in conflict with what is now held. But those are apparently mere inaccuracies of remark, so common in discussion, not involved in the decision of those cases. No question of charitable use was in either case, and no question of trust in *Heiss v. Murphey*. In *Ruth v. Oberbrunner*, the devise was in trust "to hold for the use and benefit of the order of St. Dominican and St. Catherine's Female Academy," not corporations. There is no suggestion in the will of any charity. The trust appears to have been private, not public. It was a passive trust, under which the trustee would take no title. And the trust apparently failed for want of any certain *cestui que trust* to take the legal title under the statute. In *Heiss v. Murphey*, the devise was in fee directly to an uncertain and indefinite number of persons, not capable of being ascertained with certainty, "the Roman Catholic orphans of the diocese of La Crosse," and the devise failed for want of known and certain devisees. The chief justice having been consulted at the bar in the matter, took no part in *Ruth v. Oberbrunner*, and can speak of the case only by the report. But *Heiss v. Murphey* was certainly decided by the court on the ground just stated.

V. The fourth bequest was to a contemplated institution, not yet in being when the will was made or took effect. The will gives five years for its organization on the terms prescribed. The record does not disclose whether it has yet been organized or not.

It was argued against the bequest, that the trustee to whom it was first to go, is an indefinite body, essentially uncertain, which need not, by the terms of the will, be incorporated. The objection is more subtle than sound. The bequest is made to an *institution* of learning for the education and training of females, of a character and organization commonly called and known as a female seminary, to be *organized* by the end of five years. The words, institution and organized, appear to imply an incorporation. A private school or college may by courtesy

be called an institution, according to the American fashion o promoting people and things by brevet names. But, in legal parlance, an institution implies foundation by law, by enactment or prescription. One may open and keep a private school; he cannot properly be said to institute it. So organization generally implies legal organization; in an instance like this, corporate organization. A voluntary association may be formed at will; but it can be legally organized by authority of statute only. So one or more private persons may open, keep and regulate a private school or college; but cannot be said, with legal accuracy, to organize it. The language of the will, therefore, appears to contemplate an incorporated college. It certainly admits of that construction. And, by the rule already stated, the court is bound to give it that construction to support the charitable use, *ut res magis valeat quam pereat.*

And the only question which distinguishes this bequest from the others is, whether a bequest for a charitable use can be made to a corporation not *in esse* when the will is made or takes effect. This was apparently looked upon as a more difficult question than the others; and yet, on principle, it is not very plain why it should be.

The four bequests are for one charitable use. The fourth is suspended for five years; and is then to go to a corporation to be organized in the manner provided by the will, if such corporation should be in fact so organized; failing the contemplated corporation, then the bequest is to be distributed to the three existing corporations. And so, under the will, there can be no failure of a trustee to take and administer the bequest.

Bequests for charitable uses to be administered by a corporation are sometimes of such a character and extent as necessarily to require the creation of a new corporation to administer them. This was the case under the will of Mrs. Taylor, considered in *Re Taylor Orphan Asylum, supra,* and

in *Gould v. Taylor Orphan Asylum*, presently decided. It is true that the will in that case appointed intermediate trustees to administer the charitable use, until the corporation should be created. But the will manifestly designed the trust to devolve ultimately upon the corporation. That provision distinguishes that will from this. But had that provision been omitted, and had the charitable use lapsed for want of a trustee *in esse*, it would have been a reproach to the administration of justice. The rule has the sanction of very high authority, that equity will not suffer a charitable use to be defeated for want of a trustee. " If a donor makes a gift in trust for a particular charitable purpose, as to establish a particular school, hospital, asylum, or other charitable institution, and appoints no trustee, or the trustee appointed by him is incapable of taking the gift and of acting in that behalf; or if the trustee dies before the testator, or declines to act; or if trustees are named or appointed who are not *in esse*, but are to come into existence thereafter, as by an act of incorporation, — courts of equity, in the exercise of their ordinary jurisdiction, can establish the charity; for it is their invariable practice not to allow a legal and valid trust to fail for want of a trustee. Therefore, courts will appoint trustees in such cases to take up and carry out the clear purposes of the donor, and they will order the heir or legal representatives to hold the fund upon the declared trust, until trustees can be appointed to execute the trust as contemplated. In exercising this jurisdiction, courts are called upon to exercise no extraordinary or prerogative powers. In the matters thus far discussed in the four preceding sections, there is no room for the *cy pres* doctrine, as it is called, as a judicial doctrine. So far as courts have sustained charities, as courts, they have sustained them within the strict limits of ordinary chancery jurisdiction." Perry on Trusts, sec. 722; *Hayter v. Trego*, 5 Russ., 113; *Denyer v. Druce*, Tamlyn, 32; *Reeve v. Attorney General*, 3 Hare, 191; *Inglis v. Sailors' Snug Harbor*,

3 Peters, 99; *Ould v. Washington Hospital*, 5 Otto, 303; *Fellows v. Miner*, 119 Mass., 541; *Williams v. Pearson*, 38 Ala., N. S., 299. The case of *Inglis v. Sailors' Snug Harbor* is very like the present, and the opinion of THOMPSON, J., is learned and instructive in this case.

Under these authorities, it is the duty of the court to support the fourth bequest, and thus to carry out the benevolent purpose of the testator in devoting the residue of his estate to an excellent charity.

This view renders it unnecessary to consider at any length the question argued at the bar, whether, if this bequest had been void, the bequest over of the residue to the three existing corporations would have been also void. The views already expressed indicate the opinion of the court that, had the bequest to the nonexisting corporation failed for want of a trustee, the bequests over to the three existing corporations for the same charitable use would have been valid. It appears to be merely providing, out of greater precaution, for a second trustee, failing the first.

"If, after such a plain and unequivocal declaration of the testator with respect to the disposition of his property, so cautiously guarding against and providing for every supposed difficulty that might arise, any technical objection shall now be interposed to defeat his purpose, it will form an exception to what we find so universally laid down in all our books as a cardinal rule in the construction of wills, that the intention of the testator is to be sought after and carried into effect. But no such difficulty, in my judgment, is here presented. If the intention of the testator cannot be carried into effect precisely in the mode at first contemplated by him, consistently with the rules of law, he has provided an alternative, which, with the aid of the act of the legislature, must remove all difficulty." THOMPSON, J., in *Inglis v. Sailors' Snug Harbor*.

*By the Court.* — The judgment of the court below is affirmed.

A motion by the appellant for a rehearing was denied, and the following opinion was filed, March 25, 1879:

RYAN, C. J.    It is true, as suggested by the learned counsel for the appellants, that the grave questions involved in this appeal are new in this court; but they were so well argued at the bar, and so deliberately considered by the court, that the reärgument of them, urged by the learned counsel, would serve no good purpose.    The court is fully satisfied with the principles on which the judgment went, and the questions must be considered at rest in this state.

The capacity of the colleges in question to execute the trusts of the will under their charters, was fully considered; but was, perhaps, too summarily stated in the opinion of the court.

The charter of Beloit College expressly provides, that the corporation shall accept and execute every donation or bequest made for a particular purpose, which accords with the design of the institution.    The design of the institution is education. And surely a charitable bequest for the education of a class accords with it.

The charter of the Wisconsin Female College authorizes the corporation to acquire, hold and dispose of real and personal property, for the benefit of the college, not exceeding $50,000 in value, and to make by-laws for conducting the business of the corporation.    There can be no question that the corporation is authorized to receive general bequests for the purposes for which it is established, not exceeding the amount limited.    And surely, a charitable bequest for the education of a class may be for the benefit of the college. The object of the charitable bequest was within the scope of the general powers of the corporation.    It was for the corporation alone to determine whether the bequest was for the benefit of the college.    And the power to make by-laws is quite sufficient for the administration of the trust.

The charter of Ripon College authorizes the corporation, in terms, to see that every donation or bequest made to the institution be applied in conformity to the condition on which the same is made. This is an express authority to administer charitable bequests, and, of course, carries with it the power to receive them.

The statutes of perpetuities and of uses and trusts, having been held to have no application to personalty, can of course have no operation to control or repeal the several provisions of these charters.

The learned counsel is mistaken in suggesting that the court overlooked the peculiar language of ch. 297 of 1873. That statute is an amendment of ch. 146 of 1872, so far as the latter relates to schools and colleges. Under the general statute of 1872, the schools and colleges which it authorizes, may or may not have stock and stockholders, may or may not have a governing body elected by stockholders. The first provision of the amendment of 1873 relates exclusively to stock in schools and colleges; and is necessarily confined to such as are established by stock and owned by stockholders. The second provision, the one in question here, was obviously intended to have relation to all schools and colleges organized under the statute of 1872. It is inconceivable that the legislature should intend to discriminate, in the provision, between colleges founded on stock and colleges founded by endowment or otherwise; giving to the former a power to receive and administer charitable donations, and withholding it from the latter. The provision is obviously intended to favor such donations, rather than the schools or colleges; and so arbitrary and unwise a distinction was obviously not in the mind of the legislature. The humane policy of the state ought not to be defeated by too literal a construction of the unfortunate phrase, " such board shall have power," etc. The amendment is an addition to the final section of the general statute of 1872, and the phrase may well bear such a construction as

to include the governing bodies of all schools and colleges organized under the general statute. Such, doubtless, was the purpose of the legislature; and it does little or no violence to their language to give effect to their intention.

The authorities cited by the learned counsel fail to satisfy the court that the will is not governed by the statutes in force at the time of the testator's death. As a general rule, a will speaks as from the time of the testator's death, and is governed by the law in force at the time it takes effect.

The gravity of the questions, then undecided in this state, appears to have given reasonable ground for both the action of the appellants and the appeal to this court. And the learned counsel are therefore right in claiming that the taxable costs of both parties, in both courts, ought to be paid out of the trust fund. *Will of John Meurer*, 44 Wis., 392. The question of costs was overlooked in deciding the appeal. The judgment of this court will therefore be· so far modified. Otherwise the motion for a rehearing is denied.

*By the Court.*— So ordered.