MARY A. KING *et al. vs.* LE ROY KING *et als.*

The equitable conversion of a testator's realty into personalty depends, as to both its existence and its extent, upon the testator's intention judicially determined from his will.

Courts of equity will not change the quality of a testator's property unless in accordance with his clearly expressed intention.

Hence when a surplus of personalty existed over debts and specific legacies, when permissive power was given trustees to sell realty at their discretion, when legatees were empowered

to take realty in payment of their legacies, when the word "devise" was used in the residuary clause, and no express direction to convert was given:

*Held,* that an out and out conversion of the realty could not be adjudged, though the testator had spoken of "adding" devises to legacies, and though some expressions in the will seemed to contemplate a pecuniary division.

. BILL IN EQUITY to construe a will and for administration.

The will in question is as follows :

" *To all people to whom these presents shall come.*

" Be it known that I, Edward King, of the city and county of Newport, in the State of Rhode Island, do make, ordain, publish, and declare my last will and testament as follows, that is to say : After the payment of my debts and funeral expenses, I give, devise, and bequeath to my wife, Mary Augusta King, my homestead estate, situate on Spring, Bowery, and King streets, in the fifth ward of the city of Newport, reserving, however, therefrom, a building lot on the garden plot from King Street to the carriage path that leads to the stable, for each of my children, the dimensions of each building lot I leave to be· adjusted by my said wife and children, one of which said building. lots I hereby devise to each of my said children. I also give to my said wife, Mary Augusta King, the furniture, the china, glass and silver ware, with the paintings, statuary, engravings, and all articles of *virtu,* or for use which may be in and be used in connection with the said estate, together with the horses, carriages, harnesses, and stable furniture which may be in the stable, and be for the use of myself and family at the homestead up to the time of my decease : Furthermore, I give and bequeath to my said wife the sum of five hundred thousand dollars, to be paid to her in the manner hereinafter provided, all of which devises and bequest are given her instead of dower in my estate.

" *Second,* to each of my children, to wit : to Edward Augustus King, Elizabeth Stuyvesant King, Le Roy King, George Gordon King, Mary Le Roy King, Edith Edgar King, and Alexander Mercer King, I give and bequeath the sum of one hundred thousand dollars, but said legacy shall not be paid to any child until that child shall have arrived at the age of twenty-five years; and if at any time before the payment of any such legacy my executrix and executors and trustees hereinafter named shall be of the opinion that the interest of any child entitled to a legacy hereunder will

be best subserved by having such legacy paid to a trustee to be held for such child, my said executrix and executors are required to convey such legacy of such child to my wife, or to such trustees as they may designate, to be held for the benefit of the child entitled to the same upon such conditions, and subject to such restrictions and limitations, as may seem to be proper in the case.

" *Third.* I give and bequeath to my daughter, Elizabeth S. King, her portrait by Julebat, and to each of my children I give and bequeath such articles of furniture and of other property as has been claimed by them respectively, and as has been conceded to be called theirs.

" *Fourth.* I give and devise to my brother, David King, and to his sons and daughters, all of my undivided half of " the Allen Farm," in Middletown, which I inherited from my late brother, George G. King.

" *Fifth.* I give and bequeath to my cousins, Susan F. Carlisle and Elizabeth Carlisle, of Providence, five thousand dollars each.

" *Sixth.* To Miss Louisa King, of Taunton, I give and bequeath an annuity of one hundred and forty dollars *per annum* during her natural life, to be paid half yearly, in May and November.

" *Seventh.* All the rest, residue, and remainder of my estate of every kind and nature, wherever the same may be situate, to which I may be in any way entitled at the time of my decease, I give, devise, and bequeath to my wife, Mary Augusta King, to my nephew, David King, Jr., and to my sons Edward Augustus King, Le Roy King, and George Gordon King, and to such of them as may qualify and take upon themselves the trusts herein conferred, and as they may qualify for the execution of the said trust, and to the survivors and survivor of them, but upon trust and in confidence nevertheless, for the uses and purposes following, that is to say, to collect the incomes, dividends, and profits, which may in any way arise from the said estate. The said executrix, executors, and trustees may from time to time, and as often as they may deem to be for the interest of the said trust, sell and convey any parcel or parcels of the said trust property or estate, and may invest the proceeds of the sales, and may from time to time, and when they may think proper, change the investment of any portion of the said estate whenever they may be of the opinion that it will be to

the advantage of the said trust to have any of the said trust property sold, or have the investment thereof changed, or when the sale of any of said estate may be necessary for the payment of any legacy hereunder. The said executors and trustees may take mortgages or other collateral security for the security of the trust estate, for any property which they may sell; and the said executrix, executors and trustees may, at a valuation to be agreed on between them and any of the legatees herein named, assign to such legatees any portion of such trust property in payment of the legacy to such legatee hereunder, and from the said property and estate, and from the income and profits thereof, to pay my said wife her legacy of five hundred thousand dollars, with interest thereon from the time of my decease at the rate of six *per centum per annum*, when and as she may require the same to be paid, and the legacies. to my several children, or to their trustee appointed, at the time and in the manner herein before provided; and my will is that the legacies to my children shall draw interest in the same way and at the same rate as the legacy to my said wife, and that the interest, or so much thereof as may be necessary, shall be paid to or for the maintenance, support, and use of the children as they may have occasion for the same, and the residue may be retained by my executrix, executors, and trustees, to be added to the legacy of the child entitled thereto, and to pay the other legacies in the said will mentioned. Whatever may remain of my estate after the [1] of the charges herein made thereon I give, devise, and bequeath to my said wife, Mary Augusta King, and to my several children, and my will is, and I hereby order and direct my executrix and executors and trustees, to add the same to the legacies of my said wife and children herein given to them in proportion to the legacies I have herein given them; that is, my said wife shall have five times as much thereof as either one of my said children, and the sums which pass under this clause of my will shall be paid to them or to their trustees in the same manner as the legacy of one hundred thousand dollars is to be paid.

" It is my expectation and desire that my family shall be kept together, and that my children shall continue to reside with their

---

[1] *Sic.*

mother while they remain unmarried, and that they will contribute from their incomes such proportion of the household expenses as appear to be just.

" I hereby nominate and appoint my wife, Mary Augusta King, to be the guardian of the persons and estates of any of my children who may not have arrived at the age of twenty-one years at the time of my decease.

" If either of my sons whom I have named as executor hereof shall not have arrived at the age of twenty-one years at the time of my decease, my will is, and I hereby order and direct, that my executrix and executors and trustees other than such minor shall go on with the execution of this my will in the same way, and with the same effect, and that they do all things needful to be done in the premises until such minor son shall have arrived at the full age of twenty-one years, as if said son had been of the full age of twenty-one years at the time of my decease, and had then entered upon the execution of the said trust ; and when such minor son shall have arrived at the full age of twenty-one years, he shall take out a proper letter testamentary hereon, and enter with the executrix and other executors and trustees upon the execution hereof and as trustee hereunder.

" Lastly, I hereby nominate, constitute, and appoint my said wife, Mary Augusta King, executrix, and my nephew, David King, Jr., and my sons, Edward Augustus King, Le Roy King, and George Gordon King, or such of them as shall take upon themselves the trust, and the survivors or survivor of them, to be executrix and executors and trustees under this will ; and I direct that they be not required to give any bonds for the execution hereof, and that they be exempted from all liability for their acts in the execution hereof which were done in good faith and with an honest purpose to discharge their duty according to the intent thereof.

" Hereby revoking, annulling, and making void all other and former wills by me made, I hereby declare what is written on this and the seven preceding pages, to be my last will and testament : In witness whereof, I, the said Edward King, have hereto set my hand and seal at Newport aforesaid, this nineteenth day of August, in the year of our Lord, one thousand eight hundred and seventy-five.                            EDWARD KING. [L. S.]

"Signed, sealed, pronounced, and declared by the said Edward King to be his last will and testament in our presence; in witness whereof we at his request and in his presence, and in presence of each other, have hereunto subscribed our names as witnesses.

"BENJAMIN FINCH,
"JOHN G. WEAVER,
"WM. P. SHEFFIELD.

"I, Edward King, the before mentioned testator, do make and ordain the following addition or codicil to my before written last will and testament, that is to say, I wish to express a feeling of the high regards I entertain for my sister-in-law, Mrs. Susan F. Dresser, and I therefore give and bequeath to her the sum of five thousand dollars. I hereby ratify and confirm my last will and testament as modified by this codicil, and declare the same as so modified to be my last will and testament: In witness whereof, I have hereunto set my hand and seal this nineteenth day of August, A. D. 1875.        EDWARD KING. [L. S.]

"Signed, sealed, pronounced, and declared by the said Edward King to be a codicil to his last will and testament in our presence; and in witness whereof we at his request and in his presence, and in presence of each other, have hereto set our names as witnesses.        "BENJAMIN FINCH,

"JOHN G. WEAVER,
"WM. P. SHEFFIELD."

*Providence, January* 10, 1882. DURFEE, C. J. The question submitted in this case is: Did the seventh clause of the will of the late Edward King work an equitable conversion of the real estate therein disposed of into personalty? The question, like other questions in regard to the effect of testamentary devises or bequests, is a question of what was the testator's intention; the rule being that in equity the property will be treated as being already what it was intended to become. 1 Story Eq. Juris. § 64 g; 2 Story Eq. Juris. §§ 1212–1214; *Fletcher* v. *Ashburner*, 1 Bro. Ch. Cas. 497; 1 White & Tudor Lead. Cas. in Eq. *826, and note; *Craig* v. *Leslie*, 3 Wheat. 563; *Phelps, Executor*, v. *Pond*, 23 N. Y. 69; *Dodge et al.* v. *Williams et als.* 46 Wis. 70, 97. Did the testator intend to have his real estate, out and out, converted into personalty? If he did, the court will give his intention effect by

treating the real as personal property from the time of his decease. Or, did he intend to have it converted for certain purposes only ? If so, the court will treat it as converted for those purposes, but, beyond what is required for those purposes as remaining unchanged. *Ackroyd* v. *Smithson*, 1 Bro. Ch. Cas. 503 ; *Gruse* v. *Barley*, 3 P. Wms. 20 ; *Chitty* v. *Parker*, 2 Ves. Jun. 270 ; *Taylor* v. *Taylor*, 3 De G., M. & G. 190 ; 21 Eng. Law & Eq. 363 ; *Cooke* v. *Dealey*, 22 Beav. 196, 199. Or, again, on the other hand, did he intend simply to give the executor or trustees under his will a power to convert, leaving it discretionary with them to convert or not ? If so, the conversion will depend on the will or discretion of the executor or trustees, and will not be regarded as consummated in law until it is consummated in fact. *Cook's Executor* v. *Cook's Administrator*, 20 N. J. Eq. 375 ; *Bourne* v. *Bourne*, 2 Hare, 35, 38 ; *Arnold* v. *Gilbert*, 3 Sandf. Ch. 531, 533, 556 ; *Dominick* v. *Michael*, 4 Sandf. 374 ; *Harris* v. *Clark*, 7 N. Y. 242, 260 ; *Anewalt's Appeal*, 42 Pa. St. 414 ; *Chew* v. *Nicklin*, 45 Pa. St. 84. Of course the intention of the testator is to be ascertained by examining the will, and giving it, under the guidance of established rules and authoritative precedents, a judicial construction. The precise question under the will here is : Did the testator intend to direct an absolute out and out conversion, or only to give the trustees a power to convert, to be used or not according to their discretion ? The rule for the decision of such a question as stated, and in our opinion correctly stated, by Judge Story, is, that " in general courts of equity do not incline to interfere to change the quality of the property, as the testator or intestate has left it, unless there is some clear act or intention, by which he has unequivocally fixed upon it throughout a definite character, either as money or as land ; " 2 Story Eq. Juris. § 214 ; or, as the rule is elsewhere laid down : for the will to operate as an immediate conversion, it must appear in terms, or by necessary implication, that the testator intended the property to be converted absolutely and at all events. The reason for this rigor of construction is, that there is not a spark of equity between the next of kin and the heir, and that, therefore, neither ought to lose the right which the existing character of the property gives him until it is clearly

demonstrated that the testator intended to have it changed. 2 Story Eq. Juris. § 1214.

Edward King, having executed his will August 19, 1875, died September 2, 1875, leaving a widow and seven children. In his will he gives, besides other specific legacies and devises to his widow and children and other persons, to his widow the sum of five hundred thousand dollars, and to each of his children, as they severally attain the age of twenty-five years, the sum of one hundred thousand dollars, the said last-mentioned legacies to the widow and children being payable under the seventh clause, which is as follows, to wit:

"Seventh. All the rest, residue, and remainder of my estate of every kind and nature, wherever the same may be situate, to which I may be in any way entitled at the time of my decease, I give, devise, and bequeath to my wife, Mary Augusta King, to my nephew, David King, Jr., and to my sons Edward Augustus King, Le Roy King, and George Gordon King, and to such of them as may qualify and take upon themselves the trusts herein conferred, and as they may qualify for the execution of the said trust, and to the survivors and survivor of them, but upon trust and in confidence nevertheless, for the uses and purposes following, that is to say, to collect the incomes, dividends, and profits, which may in any way arise from the said estate. The said executrix, executors, and trustees may from time to time, and as often as they may deem to be for the interest of the said trust, sell and convey any parcel or parcels of the said trust property or estate, and may invest the proceeds of the sales, and may from time to time, and when they may think proper, change the investment of any portion of the said estate whenever they may be of the opinion that it will be to the advantage of the said trust to have any of the said trust property sold, or have the investment thereof changed, or when the sale of any of said estate may be necessary for the payment of any legacy hereunder. The said executors and trustees may take mortgages or other collateral security for the security of the trust estate, for any property which they may sell; and the said executrix, executors, and trustees may, at a valuation to be agreed on between them and any of the legatees herein

named, assign to such legatees any portion of such trust property in payment of the legacy to such legatee hereunder, and from the said property and estate, and from the income and profits thereof, to pay my said wife her legacy of five hundred thousand dollars, with interest thereon from the time of my decease at the rate of six *per centum per annum*, when and as she may require the same to be paid, and the legacies to my several children, or to their trustee appointed, at the time and in the manner herein before provided; and my will is that the legacies to my children shall draw interest in the same way and at the same rate as the legacy to my said wife, and that the interest, or so much thereof as may be necessary, shall be paid to or for the maintenance, support, and use of the children as they may have occasion for the same, and the residue may be retained by my executrix, executors, and trustees, to be added to the legacy of the child entitled thereto, and to pay the other legacies in the said will mentioned. Whatever may remain of my estate after the of the charges herein made thereon I give, devise, and bequeath to my said wife, Mary Augusta King, and to my several children, and my will is, and I hereby order and direct my executrix and executors and trustees, to add the same to the legacies of my said wife and children herein given to them in proportion to the legacies I have herein given them; that is, my said wife shall have five times as much thereof as either one of my said children, and the sums which pass under this clause of my will shall be paid to them or to their trustees in the same manner as the legacy of one hundred thousand dollars is to be paid."

It appears that the debts for which the estate was liable have been paid, and that all the specific legacies have been paid or satisfied, except the specific legacies of one hundred thousand dollars each to four of the children who are still under the age of twenty-five years, and that the trustees under the seventh clause have in hand much more personal property than is needed for the payment of said unpaid legacies, so that no conversion is necessary for that purpose. It also appears that two of the older children, after having been paid their specific legacies of one hundred thousand dollars each, have deceased without issue and intestate. It therefore becomes necessary to determine whether the real

estate which the trustees hold under the seventh clause is to be regarded as equitably converted; for, if equitably converted, the shares of the deceased children go to their administrators for their next of kin as personalty, whereas, if not equitably converted, they will descend to their heirs at law as real estate.

It is not contended that the seventh clause contains any direction *expressly* given, that the real estate shall be converted at all events. The language is permissive, not mandatory; it confers an authority, it does not, at least in express terms, issue a command. Indeed, the authority is not unqualifiedly given. The trustees are empowered to sell and convey and change investments, not arbitrarily or absolutely, but " as they may deem to be for the interest of the said trust," or " to the advantage of the said trust," or " when the sale of any of said estate may be necessary for the payment of any legacy hereunder." This is not such language as would have naturally been used if an out and out conversion had been intended. We think, however, that the specific legacies were intended to be paid in money, and that therefore, for lack of personal estate to pay them, there would have been necessarily implied a direction, operating *pro tanto* as a conversion, to sell enough of the real estate to pay them, unless as provided in the seventh clause, a significant provision which in itself is inconsistent with conversion at all events, the legatees or some of them should agree to take real estate in payment at a valuation in lieu of money. But there was no such lack of personal property, and the only question therefore is whether a direction to convert must be implied for a division of the residue. In giving this residue the language of the testator is, " I give, *devise*, and bequeath," as if it was in his mind that the residue would or might consist of real as well as of personal property. Nor is there any language which necessarily implies that it was to be divided as money or personalty. Our attention is directed to the words, " I hereby order and direct my executrix and executors and trustees to *add the same* to the legacies of my said wife and children herein given in proportion to the legacies I have herein given them." It is argued from this that the testator must have intended a conversion, because real estate as such cannot be *added* to money. It seems to us, however, that the indication is too

slight and too uncertain, considering the rigor of the rule, to avail anything ; for though real estate and money cannot be arithmetically added together, they can be added together as property to complete a testamentary gift. And so, too, the concluding words of the clause may afford an indication that the testator contemplated a pecuniary division, but they are not conclusive of it ; the words are, " and the sums which pass under this clause of my will shall be paid to them (*i. e.* the children) or to their trustees in the same manner as the legacy of one hundred thousand dollars is to be paid." The words refer to a previous provision that the hundred thousand dollar legacies or some of them, instead of being paid directly to the children, might be paid to trustees for them, if the trustees under the seventh clause should think it for their interest. The words therefore direct that where any legacy has been so paid, the sums of money which are to be added to it shall likewise be so paid. But it does not follow, because the money is directed to be so paid, that the real estate is directed by necessary implication to be turned into money. The words simply afford an argument in favor of that implication, an argument which, but for the other language of the seventh clause, would be not without cogency, but which, nevertheless, in our opinion, is not sufficiently cogent or conclusive in view of the other language and of the closeness of construction required by rule and precedent, to warrant the decision that an absolute or out and out conversion was intended.

We therefore decide that the real estate is not to be regarded as having been equitably converted at the death of the testator, or previous to the death of the two deceased children before mentioned.

*William P. Sheffield & William P. Sheffield, Jun.,* for complainants.

*John H. Glover,* for respondents.