Van Steenwyck and others, Ex'rs, etc., vs. Washburn and others.

Van Steenwyck and others, Executors, etc., vs. Washburn and others.

*September 27, 1883 — February 6, 1884.*

Wills. *(1) Provision in lieu of dower, etc.: Trusts: Certainty in amount. (2-5) Election by insane widow between dower, etc., and provision in will: by whom and how made.*

1. A clause in a will provides as follows: " I direct my executors to bear constantly in mind the wants of my wife, and to set aside, use, and expend whatever moneys may be necessary, consistently with her condition, to provide for her comfort and physical health ; and I place no limit upon the sums which they may spend for the purposes indicated." *Held:*

(1) The will makes a " provision " for the widow, within the meaning of sec. 2171, R. S., which was intended to be in lieu of dower and of all share in the personal estate of the testator.

(2) Such clause creates a *personal trust* in the persons named as executors, in addition to their powers and duties as such, which is to continue during the life of the widow.

(3) There is no such uncertainty in the amount to be expended as to prevent the enforcement of the trust, or as to relieve the widow from the necessity of making the election provided for in sec. 2171, R. S.

2. The general words of the statute (R. S., sec. 2171), requiring the widow to elect between a devise or other provision made for her in the will of her husband and the share of his estate provided by law, must have a general application, and no exception can be made as to an *insane* widow.

3. Such an election cannot be made by a widow who is insane, nor can it be made by her guardian for her. But, where application (in this case an application by the executors for a construction of the will and the determination of the question of election) is made

within a year after the death of the husband, the court will make the election on her behalf.

4. In making such election the court may exercise a sound discretion, and is not limited in its choice to that property which is the more valuable. Under all the circumstances of this case, in view of the incurable insanity of the widow and of the fact that any other election would greatly interfere with the scheme of the will, the court elects for the widow the provision made by the clause of the will above quoted instead of the share of the estate provided by law, which would amount to $600,000 or $700,000. [LYON, J., dissents, being of the opinion that the court should make that election which the widow, were she sane, would make for herself.]

5. The court of the domicile, having jurisdiction of the person and estate of the insane widow, is the proper court to make the election for her, but the effect of such election upon her rights in the real estate of the testator situated in another state must be determined by the courts of that state.

APPEAL from the Circuit Court for *La Crosse* County.

Cadwallader C. Washburn died testate on May 14, 1882, leaving surviving him a widow and two children. His domicile was at La Crosse, Wisconsin, and that was also the domicile of his widow, who, at the time of his death, had been insane for many years. He left a large personal estate, also pine lands and other lands in Wisconsin, flour mills of the value of nearly one million dollars at Minneapolis, Minnesota, and a small amount of real estate in Missouri. His will was admitted to probate both in Wisconsin and Minnesota, and a guardian for the widow was duly appointed in both states.

The first two clauses of the will, which was executed December 31, 1881, are as follows:

"First. I direct all my just debts and funeral expenses to be fully paid and satisfied as soon as practicable after my decease.

"Second. I direct my executors to bear constantly in mind the wants of my wife, and to set aside, use, and expend whatever moneys may be necessary, consistently with

her condition, to provide for her comfort and physical health; and I place no limit upon the sums which they may spend for the purposes indicated."

The will then makes provision for the two daughters of the testator, directing the deposit of funds with The Fidelity Insurance, Trust & Safe Deposit Company, the income of which shall go to such daughters. It then states the intention of the testator to put his flour mills, and his pine lands on Black river in Wisconsin, into corporations, and that he has already taken some steps towards that end; and authorizes the executors to carry out such intention, unless they think it inexpedient, and to continue to manage the flour mill property for five years from and after his death, if not sooner put into a corporation.

Subject to the foregoing provisions, the will directs the payment of specific sums to a large number of persons named. It then states the intention of the testator during his life-time to found and endow an orphan asylum near Minneapolis, Minnesota, in memory of his mother, and to expend $375,000 thereon; and names certain persons as trustees to carry out such intention in case he should fail to accomplish it, directing his executors to pay over to such trustees such part of the sum above mentioned as he should not himself have expended in his life-time for that purpose. It then states a similar intention to found a public library at La Crosse, Wisconsin, and to expend $50,000 thereon, and makes a similar provision for the accomplishment of that design.

The will further directs that as soon as conveniently may be, after five years from the death of the testator, or sooner if the executors think it can be safely and consistently done with reference to the other provisions, if the flour mill property shall not have been put into a corporation it shall be conveyed to The Fidelity Insurance, Trust & Safe Deposit Company in trust, Mill A to be held for the benefit of

his two daughters, and Mills B and C for the benefit of the estate and the residuary legatees.    It then states that so long as the lands on Black river, the testator's interest in a saw mill at La Crosse, and his property in Missouri are not put into a corporation, the care and management thereof shall be in the hands of the executors, with full power to do whatever may be necessary or needful to be done in the premises.    It then proceeds:

"If my flour mills at Minneapolis and my lands on Black river, with the saw mill at La Crosse, shall not be put into corporate bodies in accordance with my intentions as hereinbefore expressed, in my life-time, nor within six months after my decease, then I authorize and empower my executors to make sale and conveyance of all or any portion of my said lands on Black river at their discretion, and also of my interest in the saw mill at La Crosse.    This and all other of my real estate, except the flour mills at Minneapolis, I do hereby authorize them to sell and dispose of at their discretion, either at public or private sale, and to make all necessary contracts and deeds relating thereto as fully as I could do if living, and without applying to any court for license to sell."

The will further directs that cash securities and other personal property not needed by the executors in carrying out the other provisions of the will, the proceeds of the sales of real estate, and the final balance upon the settlement of the final accounts of the executors, shall be deposited by them with The Fidelity Insurance, Trust & Safe Deposit Company for the credit of the estate; and states: "It will be seen that it is my wish that all my property not disposed of under the specific provisions of this will, shall be finally concentrated in the hands of the said The Fidelity Insurance, Trust & Safe Deposit Company as far as practicable, in order that the same may be readily distributed among the residuary legatees hereinafter named."

The will then provides that the residuary property shall. be divided into two equal parts, one half to be divided equally between his two daughters, and the other half to be divided equally between such of his brothers and sisters as should be living at the time of his death and the children of any of them who should be deceased by right of representation.

Within one year after the death of the testator, the executors brought this action in the circuit court for La Crosse county, for a construction of the will. *Mrs. Jeannette Washburn*, the widow, and *George K. Chase*, her guardian, were made parties defendant, together with the other devisees and legatees named in the will. The complaint sets out, among other things, a statute of Minnesota regulating the descent of real property, by which a surviving husband or wife holds in fee simple, or by such inferior tenure as the deceased was seized or possessed of, an undivided one-third of all lands, other than the homestead, of which the deceased was at any time during coverture seized or possessed, free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing. Among the points upon which instruction is asked by the executors, are the following:

First. As to whether the widow, being insane, shall take under the provisions of the will, or against the will.

Second. Whether the widow is entitled to one third of the land of which her husband was seized during coverture in the state of Minnesota, without an election.

Third. If the widow must elect, she being insane, by whom or how shall the election be made? If by the court, what shall the election be?

Fourth. Whether the widow, being insane, can elect in Wisconsin, and, if the widow cannot elect, can the guardian elect for her, and if so, what shall the election be? Shall

she take the provisions of the will, or one third of all the personalty and dower in his real estate?

The widow and her guardian answered the complaint jointly and, in a counterclaim, prayed the court to define the rights of the widow as follows:

First.   That the direction in said will to the executors to provide for the comfort and physical health of said *Jeannette Washburn* is not such a provision as puts her to an election.

Second.   That, if put to an election, and being insane, her guardian has the right to elect for her to take against said will and under the law as if the testator had died intestate.

Third.   If put to an election, and if her guardian is not authorized to elect, that the court elect for her, or direct her guardian to elect for her, to take against said will and under the law as if the testator had died intestate.

Fourth.   If this honorable court shall advise or instruct as to the property in Minnesota, it will instruct the executors that the widow is entitled absolutely to one third thereof by the same title of which the deceased was seized, and that, as to the property in Minnesota, no election is necessary, because she cannot there be deprived of her one-third of the real estate without her written consent.

The court found as facts, among other things, the following:

Second.   That the defendant *George K. Chase*, on the 15th day of December, 1882, filed in the probate court of Hennepin county, Minnesota, which court had jurisdiction of the subject matter and of the parties, a petition praying that an undivided one-third of the Minnesota real estate be set off to the widow *Jeannette Washburn;* and that on or about the 11th day of May, 1883, the said court filed a decision electing to take for the widow one third of the Minnesota real estate in fee simple, and renounce for her the provisions in her favor in the will.

Third. That upon the 23d day of November, 1882, the defendant *George K. Chase* filed in the probate court of La Crosse county, Wisconsin, a notice in writing signed by him as the guardian of said widow, purporting to renounce the testamentary provision in favor of said widow, and take for her under the law.

Fourth. That on the 2d day of December, 1882, the said *George K. Chase*, as guardian of said widow, filed in the probate court of La Crosse county, Wisconsin, a petition praying said court to adjudge the election made by said guardian sufficient or insufficient, praying said court itself to elect for said widow or ratify the election sought to be made by the guardian, or authorize the guardian to elect, proceedings on which petition are still pending and undetermined.

As conclusions of law, the court found, among other things:

First. That the direction in said will given by the testator to his executors to provide for his widow, is not a devise to said widow or other provision made for her within sec. 2171, R. S.

Second. There is no intention apparent upon the face of the will that the said direction to his executors is such a provision as puts her to an election between her dower and thirds of the personal estate and other legal rights, and the benefits of the will, and that she is entitled to take whatever benefits arise to her under such direction and also her legal share of all the testator's property, to wit: One third of his personal property absolutely, and the use for her life of one third of the real estate in Wisconsin of which he was seized during marriage.

Third. The court declines to instruct the executors as to the rights of the parties in, or the title to, the testator's real estate in Minnesota.

From a judgment entered accordingly, the executors appealed.

Van Steenwyck and others, Ex'rs, etc., vs. Washburn and others.

For the appellants there were briefs by *Finches, Lynde & Miller,* attorneys, and *Wm. P. Lynde,* of counsel, and a brief by *G. C. Prentiss,* of counsel, and the cause was argued orally by *Mr. H. M. Finch* and *Mr. Lynde.* They argued, among other things:

1. The provision in the will for the widow is a legacy charged upon the estate, of which the executors are made trustees, and the amount of which is susceptible of estimation with reference to her circumstances and condition. And the rights of the widow could be enforced at law or in equity. *Farwell v. Jacobs,* 4 Mass., 634; *Erickson v. Willard,* 1 N. H., 217; *Burt v. Herron's Ex'rs,* 66 Pa. St., 401; 2 Redf. on Wills (3d ed.), 387; *Warner v. Bates,* 98 Mass., 274; *Thorp v. Owen,* 2 Hare, 608; *Foley v. Parry,* 2 Mylne & K., 138; *Kilvington v. Gray,* 10 Sim., 293; *Crane v. Crane,* 17 Pick., 422. Such a legacy is not a bonus or gratuity but a price offered for the wife's interest in the estate. When accepted it amounts to a purchase of that interest from her, and the legacy, therefore, being purchase money, does not abate like other legacies, but must be paid in full out of the estate in preference to them. *Isenhart v. Brown,* 1 Edw. Ch., 411; *Chamberlain v. Chamberlain,* 43 N. Y., 424; *Sanford v. Sanford,* 4 Hun, 753. It is therefore a provision within the meaning of sec. 2171, R. S., and puts the widow to an election.

2. The disposition of the testator's property by the will is wholly and unmistakably inconsistent with the assertion by the widow of a claim to one third of the lands in Minnesota in fee and dower in the Wisconsin lands; and if the widow elects to accept the provision for her in the will, she must conform to all its provisions, renouncing every right inconsistent with it. 1 Pom. Eq. Jur., sec. 558, and cases cited; 2 Jarman on Wills (5th Am. ed.), 28; 1 White & T. L. C. in Eq., 510; 2 Sugden on Powers, 147; 2 Bright on H. & W., 486, 497, note by Jacob; *Ker v. Wauchope,* 1 Bligh, 21;

2 Spence's Eq. Jur., 602; *Smith v. Guild*, 34 Me., 443; *Weeks v. Patten*, 18 id., 42; *Hyde v. Baldwin*, 17 Pick., 308; 2 Jarman on Wills (Randolph & Talcott's ed.), 1, and cases cited.

3. The right and duty of making an election are personal, and cannot be exercised by a guardian. 2 Jarman on Wills, 2 n; *Pinkerton v. Sargent*, 102 Mass., 568; *Crozier's Appeal*, 90 Pa. St., 384; *Atherton v. Corliss*, 101 Mass., 44; *Merrill v. Emery*, 10 Pick., 507; *Boone v. Boone*, 3 Harr. & McH., 95; *Collins v. Carman*, 5 Md., 504; *Welch v. Anderson*, 7 Jones (Mo.), 293; *Hamilton v. O'Neil*, 9 Mo., 10; *Hinton v. Hinton*, 6 Ired. Law., 274; *Lewis v. Lewis*, 7 id., 72; *Kennedy v. Johnston*, 65 Pa. St., 451; *Ebrington v. Ebrington*, 5 Mad., 117; *Haggard v. Benson*, 3 Tenn. Ch., 276; *Tealey v. Hoyt*, 3 id., 561; *Chipman v. Montgomery*, 63 N. Y., 235; *Tomlyn v. Jayne*, 14 B. Mon., 162; 2 Scribner on Dower, 469.

For the respondents, *Jeannette Washburn* and *George K. Chase*, her guardian, there was a brief by *Cameron, Losey & Bunn*, and oral argument by *Mr. Bunn*. They contended, *inter alia:*

1. The direction in the will that the executors provide for the comfort and physical health of the widow is not a " devise or other provision " within sec. 2171, R. S. Being in derogation of the well-established rule that, unless otherwise expressly stated or necessarily implied, a devise or legacy is considered a gift from the husband in addition to dower, the statute must be strictly construed in favor of the rights of the widow. Dower is favored by law and stands to-day where it was placed by Lord Coke, alongside of life and liberty. No provision of a pecuniary character can stand in lieu of dower and other interests and allowances made by law, unless the widow has the control of it and can use it as she chooses, or unless it is a suitable provision vested in trustees to continue as a safe dependence for her benefit so long as she lives. The direction in question does not charge

her support upon the estate, but is a mere personal direction to the executors to spend certain moneys during their continuance in office. This can only be during the settlement of the estate, which the testator contemplated should close at the end of five years. And the expenditure is strictly limited to her comfort and physical health. Nothing is to be spent for her mental health or the restoration of her reason. By subd. 2, sec. 3935, R. S., the widow is entitled to maintenance during the settlement of the estate. The provision of the will, if a provision at all, is not more ample, and confers upon the widow only what the law already gave her in addition to dower and one third of the personal estate. Considering the great value of the estate, it is certainly in accord with the benevolent intentions which the testator must be supposed to have entertained, to hold that this was a bounty to the widow, rather than something conferred only upon condition that she relinquish an estate of far greater value; and it would be a reasonable interpretation of the language to hold that the will contains a mere advice to the executors and an expression of the testator's wish that the widow's allowances under the law, during settlement of the estate, should be measured and dispensed with a generous liberality. See *U. S. v. Duncan*, 4 McLean, 99. Moreover, the statute must be construed *(noscitur a sociis)*, as if it read: "If any lands be devised to a woman, or other *similar* provision be made for her." *Cleaver v. Cleaver*, 39 Wis., 96. Now, it is certain that, under the first clause, the devise referred to must be to the widow herself, not to another in trust for her. *Van Arnsdale v. Van Arnsdale*, 2 Dutch., 404. Therefore the provision spoken of in the second clause must be something, either devise or legacy, given directly to her — something which is her own absolutely and which does not depend on the will of an executor or trustee.

2. The statute provides only for cases where an election

is possible. As an insane widow cannot elect, she is not within the statute. It is absurd that the legislature in saying (sec. 2171, R. S.) that a certain class of persons *shall elect*, intended to include lunatics, who, as the legislature well knew, were absolutely incapable of making an election. And it is fairly implied by the language "*entitled to an election*" (sec. 2172), that the person entitled should also be competent to make the election. The right of dower does not spring from the statute, nor does the statute change the nature of dower nor of the act of election. Its sole object was to change the legal presumption that a gift by will was in addition to dower, and to limit the time for election. That a widow accepting the provisions of a will is a purchaser, and that the renunciation of her rights is a matter of convention or contract between herself and her husband, see *Isenhart v. Brown*, 1 Edw. Ch., 411, and cases cited by appellants. By her marriage, therefore, *Mrs. Washburn* acquired legal rights in the real and personal estate of her husband of which she could not be deprived without her *consent*. And the true rule is that the action of accepting or renouncing a provision in the will is grounded upon *consent* or *contract*. There being no capacity, there can be no contract, and the widow cannot be said to renounce or sell her legal rights In many cases the principle has been expressly decided that in case of a lunatic there can be no presumption of acquiescence. *Earl Digby v. Howard*, 4 Sim., 588; *S. C.*, 2 Cl. & Fin., 636; *Ashby v. Palmer*, 1 Mer., 296; *Seeley v. Jago*, 1 P. Wms., 389; *Breasted v. Farmers' L. & T. Co.*, 4 Hill, 73. It is held that general words in a statute of limitation include lunatics and other persons under disability. But there is a great distinction between statutes of limitation, which are statutes of repose, and which bar *remedies* only, and that other class of statutes which bar *rights*. See argument for appellant in *Collins v. Carman*, 5 Md., 503; *Wright v. West*, 2 Lea, 84; *Snither v. Snither's*,

*Ex'r*, 9 Bush (Ky.), 231; *Macknet v. Macknet*, 29 N. J. Eq., 54.

3. The guardian of *Mrs. Washburn* can elect for his ward, and the election which he has heretofore made to take her legal share is a valid election. It is conceded that the guardian's acts are all subject to the approval and revision of the court; and if he elect otherwise than for the best interest of his ward, the court might, by order, change, or compel him to change, such election. But the power of election is of no higher quality than that of making contracts or deciding upon other questions requiring the guardian's judgment relative to his ward's estate. And the fact that an election arises out of a will, instead of some other transaction or instrument, does not change its quality. The guardian's act, when for the benefit of the ward, should be as valid in one case as the other. The statutes regulating the powers of guardians are secs. 3964, 3981–86, 3991, R. S. Sec. 2171 is substantially the same statute which has been in force in the state from its earliest history. Sec. 3, ch. 106, Laws of 1877; sec. 2, ch. 47, Laws of 1868; sec. 19, ch. 89, R. S. 1858; sec. 19, ch. 62, R. S. 1849. The statutes have always given the guardian the right to appear for and represent his ward in all actions and proceedings. Sec. 3982, R. S.; secs. 22, 23, R. S. 1858. Prior to the passage of sec. 3, ch. 106, Laws of 1877, the election of the widow was manifested by commencing proceedings for the recovery of dower; and the guardian could clearly elect for her by commencing such proceedings. By the law of 1877 the filing of a notice was made equivalent to the commencement of such proceedings. It is not provided that the widow should file the notice personally, and, there being no intent to change the general policy of the law relative to the powers of guardians, the guardian should still be held authorized to make the election in the new mode. Moreover, the notice of election is a paper filed in the court during the progress of the administration, and is a proper and

necessary step therein; it is filed by a party to the case, and affects the rights of other parties; and it would properly be entitled in the matter of the estate. The filing of such a paper is therefore a *proceeding*, and within the direct statutory authority of the guardian. The guardian elected for a minor under the direction of the court in *Bor v. Bor*, 3 Bro. P. C. (ed. Tom'l), 173. See, also, *State ex rel. Martin v. Ueland*, 30 Minn., 277; *Kennedy v. Johnston*, 65 Pa. St., 451; *Brown v. Hodgdon*, 31 Me., 65; *Ridgway v. Manifold*, 39 Ind., 63. Contrary decisions in several of the states have resulted in express statutes giving the guardian authority to elect. In *Lewis v. Lewis*, 7 Ired. Law, 72, the decision was placed upon the ground that the statute expressly required her personal dissent before the judge in open court; and upon the further ground that a court of law, which was the court where the guardian filed his petition, had no jurisdiction. In *Cheshire v. McCoy*, 7 Jones Law, 377, it was said that *Lewis v. Lewis* was based on the literal meaning of the terms used in the statute. Directly opposed to this case is *Howland v. Heckscher*, 3 Sandf. Ch., 519.

4. If the guardian has no power to elect for his ward, the court will elect for her, if an election is necessary. See *McQueen v. McQueen*, 2 Jones Eq., 18; *Flippen v. Banner*, id., 455; *Robertson v. Stevens*, 1 Ired. Eq., 247; *Wright v. West*, 2 Lea, 78; *Kennedy v. Johnston*, 65 Pa. St., 451. And if a bill is filed to compel an election, within the statutory period, it is a sufficient compliance with the statute. Scribner on Dower, 473–4; *U. S. v. Duncan*, 4 McLean, 102; *Smither v. Smither's Ex'r*, 9 Bush (Ky.), 231; *Grider v. Eubanks*, 12 id., 510; *Macknet v. Macknet*, 29 N. J. Eq., 54. In such case the election, when made, would relate back to the filing of the bill. *Howland v. Heckscher*, 3 Sandf. Ch., 519. In making such election the court can be influenced by no other consideration except the inquiry which is the most

valuable for the widow.   The uniform practice is to ascertain, by reference or otherwise, what is the most valuable, and elect to take that.   1 Pom. Eq. Jur., secs. 509, 510; 1 L. C. in Eq., 539, (374*), 573; *Gretton v. Haward*, 1 Swanst., 413n; *Cooper v. Cooper*, L. R. 7 H. L., 68; *Addison v. Bowie*, 2 Bland, 623.   When it appears upon the record which interest is the most valuable, the court will elect without reference, or consider an election as already made.  *Wilson v. Lord Townshend*, 2 Ves., 693.

The following opinion was filed November 20, 1883:

Cole, C. J.   This is a bill filed by the executors praying the court to construe the will of the late Gov. C. C. Washburn, and to direct them as to the manner of executing its trusts.   All persons interested in the estate are made parties. The first question, as to which the instruction of the court is asked, is whether *Mrs. Washburn*, the widow of the testator, being insane, must take under the provisions of the will or against the will.   The statute on this subject enacts that if any lands be devised to a woman, or other provision be made for her in the will of her husband, she shall make her election whether she will take the lands so devised, or the provision so made, or whether she will claim the share of his estate allowed her by law.   She is not entitled to both, unless it plainly appears by the will to have been so intended by the testator.   Sec. 2171, R. S.   When the widow shall be entitled to an election, she shall be deemed to have elected to take such devise or other provision, unless, within one year from the death of her husband, she file in the proper probate court a notice in writing that she elects to take the provision made for her by law instead of such devise or other provision.   Sec. 2172.   As was observed in *Hardy v. Scales*, 54 Wis., 452, this statute changes the common law rule that a provision for the widow, in the will, was pre-

sumed to be a matter of bounty, and not intended to exclude dower, unless it was so declared in the will, or resulted as a necessary implication from its terms.

The second clause of the will under consideration reads as follows: "I direct my executors to bear constantly in mind the wants of my wife, and to set aside, use, and expend whatever moneys may be necessary, consistently with her condition, to provide for her comfort and physical health; and I place no limit upon the sums which they may spend for the purposes indicated." Now, can this be said to be a "devise" or "other provision" made for the widow within the meaning of sec. 2171 above referred to? We are clearly of the opinion that an affirmative answer must be given this question.

All the counsel agree that the intention of the testator, as collected from the whole will, must control in the interpretation of any particular clause. Now, observing this cardinal rule of construction, were there any doubt as to the meaning or intent of the second clause,— and we do not really perceive how there can be,— such doubt would be removed by an examination of the other clauses. But regarding this clause alone, what conclusion can be drawn from the language used? It seems to us we must say and hold that the testator therein and thereby intended to make, and did make, provision for his wife which was to be in lieu of dower and one third of the personal estate. The provision is to continue for her natural life. It is ample and adequate to meet her every want, to secure for her every comfort and every relief which money may provide, and which her physical health or mental infirmity may require under any possible change in her condition. The executors are imperatively directed *to bear constantly in mind the wants of his wife;* to set aside, use, and expend whatever money may be necessary, consistently with her condition, to provide for her comfort

and physical health, without limit as to the sums they may spend for these purposes. This is strong and unequivocal language, and excludes all doubt as to the meaning or intent of the testator. We are confident we have not misapprehended it in the remarks which we have made upon this clause.

This conclusion is greatly strengthened by other clauses of the will, in which the testator carefully directs how his estate is to be managed and disposed of by his executors or the Fidelity Company, his ultimate trustee. Express provision is made for renting the flouring mills at Minneapolis by the executors; for putting them and the pine lands on Black river into a corporation; or in the event that these properties were not put into a corporation, then for their sale and conveyance; for cutting the timber on the pine lands, manufacturing it into lumber, and selling the same; and for the final distribution of the residue of the estate after all legacies and bequests were paid. These provisions are utterly inconsistent with the idea that the widow was to have dower in the estate, and demonstrate that it was the intention of the testator to make some other provision for her which should be in lieu and satisfaction of all legal rights. And so far from "it plainly appearing by the will" that she should have dower in addition to that provision, the contrary intention is clearly manifest. Counsel referred to cases which hold that after a provision is made for the widow, where lands are devised to trustees upon trusts for any purpose, with power or direction given the trustees to occupy, manage, or lease the same, or even to cut timber on any part of the lands, this mode of disposition is considered inconsistent with a claim of dower and makes an election necessary. *Birmingham v. Kirwan,* 2 Schoales & L., 444; *Miall v. Brain,* 4 Madd., 119; *Butcher v. Kemp,* 5 Madd., 61; *Goodfellow v. Goodfellow,* 18 Beav., 365, are instructive

upon this point. We do not deem it necessary to go over these cases, inasmuch as the intention to exclude dower is so perfectly plain and clear on the face of the will.

But the learned counsel who combats this view says the direction to the executors to provide for the comfort and physical health of his wife, created no charge upon the testator's estate; that it was merely a personal direction to them, intended to be in force only during the settlement of the estate, which the testator contemplated would be closed at the end of five years. Some of the duties imposed upon the executors by the will, it was doubtless expected they would fully discharge or perform in five years. But that was not the case in respect to all the duties intrusted to them by the will. The direction requiring them to constantly bear in mind the wants of his insane wife, and to set aside, use, and expend whatever money might be necessary to provide for her comfort and support, created a personal trust which was to continue while she lived. This is apparent from the will. The executors cannot discharge themselves of this important duty — as they can of some others — by transferring that trust to "The Fidelity Insurance, Trust & Safe Deposit Company" of Philadelphia, even if that institution would agree to accept and perform it; for it was a matter of personal trust and confidence reposed in them as trustees by the testator. The will not only provides all the pecuniary means necessary for a full performance of the trust, but it expressly requires the executors to expend whatever may be essential to promote her comfort or meet her wants. To maintain and support such a trust, to enable the executors to perform the duties which it devolves upon them, they have the control of the entire estate, and are required to set aside and retain in their hands a sufficient sum to meet all the possible wants of *Mrs. Washburn,* of every kind, while she lives. For, as we have said, this is a personal trust confided to them in addition to the ordinary

powers and duties of executors. It cannot be doubted that the testator regarded it as the most delicate and important duty intrusted to them under the will; therefore he selected for its performance intimate friends and relatives, persons who would most likely take a lively interest in, and watch with the greatest concern over, the welfare and comfort of his unfortunate wife. It seems hardly necessary to add that the second 'clause creates a personal trust within the strict sense of the term. See *Saunderson v. Stearns*, 6 Mass., 37; *Dorr v. Wainwright*, 13 Pick., 328; *Dole v. Johnson*, 3 Allen, 364; *Carson v. Carson*, 6 Allen, 397; *Warner v. Bates*, 98 Mass., 274; *Sawyer's Appeal*, 16 N. H., 459; 2 Story's Eq. Jur., §§ 1058 *et seq.;* 1 Perry on Trusts, § 262; *Batchelder v. Batchelder*, 20 Wis., 453; *Burt v. Herron's Ex'rs*, 66 Pa. St., 400; *In re Sanderson's Trust*, 3 Kay & J., 497; *Thorp v. Owen*, 2 Hare, 608; *Erickson v. Willard*, 1 N. H., 227; *Foley v. Parry*, 1 Cooper, Sel. Cas., 219; *S. C.*, 8 Eng. Cond. Ch. R., 444; *Stewart v. Chambers*, 2 Sandf. Ch., 382.

But the learned counsel insists that the provision in the second clause cannot come within the statute, because the amount to be expended by the executors for the support of *Mrs. Washburn* rests solely in their discretion, and that a court will not review such discretion if exercised in good faith. So he says, whether the amount to be spent for the benefit of the widow is $1,000 or $5,000 a year, is entirely within the discretion of the executors, and that no person can be put to an election until fully advised of the extent and value of the two rights or things he must choose between. In answer to this position we say there can be no doubt, if the executors neglect or refuse to expend whatever money may be necessary to execute the trust, that a court of equity will compel them to do so. There is surely no such uncertainty as to the requisite amount as to be incapable of legal ascertainment. *Id certum est quod certum reddi potest.* In one sense there is no discretion in the executors or trustees

upon the subject. They must expend whatever is necessary for the purposes indicated. The direction is mandatory in the will, leaving no discretion in the executors in that regard. An absolute duty is imposed to expend whatever is necessary, regard being had to the condition and changing circumstances of *Mrs. Washburn*. At one time a larger expenditure may be called for than at another, but the provision made is ample and adequate to meet every want and secure every comfort. Certainly a court of equity would find no difficulty in enforcing such an absolute trust, should the executors neglect or fail to perform it. This proposition we deem too plain to require further comment.

Thus, having reached the conclusion that the will makes provision for the widow within the true intent and meaning of the statute, the next question to be considered is, Does the statute apply to an insane person? On this point it is vigorously insisted that it does not; that the statute provides only for cases where an election is possible; that an insane widow is incapable of making any election, of exercising any intelligent judgment or choice, therefore she cannot come within its terms. The statute manifestly implies choice or election on the part of the widow, or by some instrumentality in her behalf. At the same time it is apparent that the statute contains no exception of persons who are insane or otherwise under disability. Where the widow is sane, is *sui juris*, capable of making contracts, competent to bind herself by a legal obligation, the way is plain. She can elect whether she will take the devise or other provision made for her in the will of her husband, or whether she will claim that interest in his estate which the law gives her. But when we come to apply the statute to an insane widow, a *non compos mentis*, one who can exercise no intelligent judgment or choice, one who is not responsible for her acts, then it goes against our notions of right and justice. Still, the law is well settled that in the

construction of statutes general words are to have a general operation, unless something is found in the statute itself which affords grounds for qualifying or restraining them. "No exceptions can be claimed in favor of particular persons or classes unless they are expressly mentioned." DIXON, C. J., in *Woodbury v. Shackleford*, 19 Wis., 60. The same principle was recognized and enforced in *Lindsay v. Fay*, 28 Wis., 177, and it is doubtless in accord with the great weight of judicial opinion on this subject. As the legislature has made no exception in the statute, the courts have no right to make one, because to do so would be legislation. Were we to hold that the statute does not include a widow of unsound mind, we should certainly be making an addition to it which the legislature has not seen fit to enact. The ill effects of holding that the statute did include an insane widow were most ably presented in the argument of respondents' counsel. These evil consequences, however proper for the consideration of the legislature, can really have no weight in giving construction to a statute which is plain and unambiguous in its language. The doctrine of an inherent equity, creating an exception as to any disability where the legislature has made none, must be abandoned, particularly in a country where the legislative power is distinct from the judicial. The result, therefore, on this point, is that we must hold that the general words in the statute have a general application, and since there is no exception as to an insane widow, the court can create none. *Demarest v. Wynkoop*, 3 Johns. Ch., 138; *Lewis v. Lewis*, 7 Ired. Law, 73; *Thompson v. Egbert*, 2 Har. (N. J.), 462; *Bank v. Dalton*, 9 How., 522.

The next inquiry is, How and by whom is the election to be made? The counsel for the executors say the right and duty of making an election are personal to the widow, and must be made by her alone. But she is insane, mentally incapable of making a choice or election in the matter. This

being the case, can any election be made for her under the statute, or does the power to elect fail on account of her disability? These are questions not free from difficulty, but we think they are susceptible of solution. The counsel for the respondents claim that the guardian of *Mrs. Washburn* can elect for her, and that the election which he has made to take her legal share in the estate is a valid election, and must stand. At the same time the counsel, with his usual fairness and candor, admits that there are many decisions disaffirming the right of the guardian to elect. This concession is not improvidently made. Many cases can be found which, in effect, hold that the statutory right of election conferred upon the widow is a strictly personal right, and cannot be exercised by another person in her behalf; that even the incapacity of the widow to elect, by reason of insanity, furnishes no sufficient ground for the relaxation of this rule. *Collins v. Carman*, 5 Md., 503; *Hinton v. Hinton*, 6 Ired. Law, 274; *Lewis v. Lewis*, 7 id., 73; *Sherman v. Newton*, 6 Gray, 307; 3 Har. & McII., 95; *Welch v. Anderson*, 28 Mo., 293. We are not aware of any direct authority which decides that the guardian of an insane widow may elect for her, in the absence of a statute giving him that right. In *Brown v. Hodgdon*, 31 Me., 65, the widow waived the provision made for her in the will. Subsequently a guardian was appointed, on account of insanity, who claimed dower for her. This was quite consistent with the position that she had made a valid waiver. It was contended that the widow was insane when she made the waiver. But whether she was or not the court did not decide. The court says, in effect, that the contracts of insane persons are not void, but only voidable, and may be ratified during a lucid interval; that nothing had been done by the widow evincing a disposition to avoid the waiver, nor by the guardian after his appointment. It is apparent the case fails to sustain the position to which it is cited, that the guardian may elect. In *Heaven-*

*ridge v. Nelson*, 56 Ind., 90, the court decides that the guardian of a widow of unsound mind has no power to elect for her, as between the provisions of a will and her legal rights. The case is in harmony with the great current of authority. *Pinkerton v. Sargent*, 102 Mass., 568, affirms the same doctrine, that the privilege of a waiver is a purely personal right, and if the widow is insane, neither she nor her guardian can exercise it. It seems unnecessary to multiply cases upon this point. Nor do we find anything in the statute relating to the powers and duties of a guardian of an insane person which confers the right to elect.

We cannot go over, in detail, the various provisions referred to by counsel, but content ourselves with saying that in none of them is this right given, either expressly or by any fair implication. The right of the guardian to sue for and collect debts due his ward, and to appear for and represent such ward in all actions and proceedings, except where another person is appointed for the purpose, does not relate to or apply to an election under a will. It properly refers to the proceedings in ordinary actions in court. Still, notwithstanding these provisions of the statute, the appointment of a guardian *ad litem* is generally deemed necessary, and made; but it is clear that the statute confers no power on the guardian to make an election for an insane widow, and it would be a perversion of its terms to so hold.

It therefore follows, from these views, that the election made by the guardian of *Mrs. Washburn* was without authority of law, and can have no validity whatever. But if neither the widow nor guardian could made a valid election under the statute, the question arises whether a court of equity has the power to make it for her. At common law, where the person entitled to elect was insane and incapable of exercising the right, a court of equity would elect for him. Says Mr. Justice Story: "It is in cases of wills that the doctrine respecting election and satisfaction must

frequently, though not exclusively, arise in practice, and is acted upon and enforced by courts of equity." The learned author defines "election," as used by him, " to be an obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both. Every case of election, therefore, presupposes a plurality of gifts or rights, with an intention, express or implied, of the party who has the right to control one or both, that one should be a substitute for the other. The party who is to take has a choice, but he cannot enjoy the benefits of both." 2 Story's Eq. Jur., § 1075.

Independently of the statute, probably no one would question the power of a court of equity, where the application was in time, to elect for an insane widow, or other person incapable from want of capacity of personally making it. Such a power has often been exercised by courts of chancery in England and in this country, and the jurisdiction is well established. Does, then, the statute which requires the widow to elect, limit or abrogate this jurisdiction, so that a court can no longer exert it on behalf of an insane widow? We perceive no sufficient grounds for saying that it does. The object of the statute is to regulate dower, declare when and under what circumstances it shall exist, define its extent, and prescribe the manner in which it may be barred. True, it provides that when the widow is put to an election she shall be deemed to have elected to take the jointure, devise, or other provision, unless, within a year from the death of her husband, she file a notice that she elects to take the share of his estate which the law gives her. But we do not think it was the design of the statute to abrogate the jurisdiction of a court of equity in a proper case. Such an inference should not be made without a clear expression of such legislative intent. Besides, within the year, the executors invoked the jurisdiction of the court to construe the

will, asking directions as to how they shall execute its trusts, and that the question of election be determined. In one question they distinctly ask whether the widow, being insane, is put to an election; if so, how and by whom the election is to be made. This calls upon the court to make the election if it has the power to do so.

The question as to the right of a court of equity to make an election for an insane widow has been considered in other states where a similar statute exists. In *Wright v. West*, 2 Lea (Tenn.), 78, it was decided that a widow who had not dissented from the provisions of her husband's will within the time prescribed by law, because of her insanity, might in equity assert her rights in the estate as though she had dissented. Judge FREEMAN dissented from the decision, holding that she was barred by the statute. But the discussion in both opinions is learned and able. · In *Smither v. Smither's Ex'r*, 9 Bush (Ky.), 230, the court ruled that the widow might make an election in a mode different from that pointed out by statute. The proceeding was in equity, and the election of the widow was postponed until the condition of the estate was ascertained. In *Collins v. Carman*, 5 Md., 503, no renunciation by the widow or by any one in her behalf was made or attempted to be made during her life, but the provisions of the will for her benefit were fully complied with by the executor. The widow was insane at the death of her husband, and continued so until she died. Shortly after her death letters of administration on her estate were granted to the complainant, who promptly filed a renunciation of the devises and bequests made for the benefit of his intestate. He then filed a bill to obtain a decree declaring his renunciation effectual and sufficient; or if, for any cause, it should be deemed informal and imperfect, he prayed that he might be considered as revoking by his bill the renunciation. The court held that the act requiring the widow to renounce the devises and bequests in the will within six

months from the death of the husband, included an insane person, and that her administrator, after a lapse of four years, could not renounce for her, she having enjoyed during all that time the benefits provided for her by the will. Therefore the court decided he could not make the renunciation or claim anything beyond what was given his intestate in the will. In the opinion the court uses this language: " In saying this, we wish to be understood as not intimating any opinion upon the question whether a court of equity can or cannot make an election or renunciation for an insane widow during her life, and in proper time. The case does not call for a decision on that point." Page 527. Therefore, in view of these authorities and of the nature of the case, we are disposed to affirm the right of the court to elect for the widow.

But upon what principles must the court proceed, or what considerations should be regarded, in making that election? The counsel for the respondents insist that the principle upon which an election is made by a court for a person under disability, is to take that property which is the most valuable. That may afford a just and proper rule upon which to proceed in most cases. But we think it would not be wise to act upon that principle in the case before us for these reasons: Gov. Washburn, at the time of his death, owned large properties in the states of Wisconsin, Minnesota, and Missouri. Had he died intestate it is said his widow would have taken $600,000 or $700,000 as her share of his estate. It was assumed on the argument, and such doubtless is the fact, that the executors have set aside $5,000 a year to be expended for her support. If this amount should be doubled or trebled, it is plain that the sums expended for her benefit would only be a small fraction of the share she would take by law. *Mrs. Washburn* was sixty-two years of age when this bill was filed. She has been insane, without a lucid interval, for more than twenty-five years. There is no ground for a

rational hope or expectation that she will ever be any better. Her mind has rested too long in the deep eclipse to justify or warrant such a hope. Medical science and skill long since exhausted their resources in efforts to cure her. Presumably she is incurably and hopelessly insane; and if she is ever restored to her reason, ever again clothed and in her right mind, to all human judgment that change must be brought about by an agency higher than that of man. She can have no conception of the value or use of money. If "the wealth of Ormus and of Ind" were laid at her feet she would not distinguish it from the dust. She cannot use money; she cannot manage it; its possession would be of no earthly benefit or advantage to her. Provision is made in the will for all her wants and necessities; for medical care and attendance; for all other care; in short, for everything which will promote her comfort and physical health. Does not this meet the demands of every equitable requirement, so far as *Mrs. Washburn* is concerned? Further, cannot the court pay some regard to the benevolent intentions of the testator towards his kindred by blood, and those having claims on his bounty; to his munificent bequests for admirable and noble public charities, such as establishing a public library, an orphan asylum for young and destitute orphans; to the fact that he made a will in and by which he disposed of his entire estate in a manner which seemed to him just and right? Is it permissible for the court to consider any of these matters, or must its discretion and judgment be limited to the sole inquiry, which property is the more valuable? It is evident if the court should elect what the law gives the widow in case of intestacy that the intentions of the testator will in a measure be defeated. Such an election would greatly interfere with the scheme of the will. Defeating a will, in any substantial provision, is much like breaking it. It is defeating it *pro tanto.* The right to dispose of one's estate in accordance with his own wishes is a

sacred right, which a court of equity will not disregard or destroy. The late chief justice, in *Dodge v. Williams*, 46 Wis., 70, says: "Every one should have the same power to dispose by will after his death, in accordance with his own wishes, of whatever he may leave behind him in his own sole right, as he had in life to dispose of it by contract or by gift; and it is as much the duty of courts to uphold and enforce his will after death, as to uphold and enforce his contracts made during life." Pages 90, 91.

It seems to us these considerations are entitled to some weight in making the election in this case. If the court can regard them, if it has any discretion in the matter, they should exert their due influence on our judgment. But if the court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion. But we think it is the clear duty of the court to exercise a sound discretion in the matter — to consider everything having a legitimate bearing on the election to be made. Consequently, acting upon that principle, the court, in view of *Mrs. Washburn's* insane condition, in view of the liberal and ample provision made for her benefit in the will, and in consideration of all the facts, does elect for her that provision as being on the whole the best and most advantageous for her interest and welfare.

But it is said the heirs of *Mrs. Washburn* are entitled to recognition upon the question of election. An examination of the will shows that the testator has made a most bountiful provision for his two daughters. It is said they will receive under the will about a half a million dollars apiece. They have, therefore, no ground to complain; indeed, they do not complain of anything in the will. It is but fair to assume from the record that it is not their wish that any disposition which their kind and affectionate father saw fit to make of his property, should fail, or not have full effect given to it.

These remarks sufficiently indicate our views on most of the points upon which directions were asked by the executors. Of course, the personal property will be governed by the law of the domicile, so that the election which has been made will dispose of all questions relating to the personal estate and the real estate situated in this state. How this election may or should affect the rights of the widow in real property in other states, is a point upon which we decline to express an opinion, although the executors ask us to decide the question here. But it seems to us that the decision of that question may properly be left to the tribunals of the state where such real estate is situated. There can be no doubt of the correctness of the proposition that the court of the domicile, the one which has jurisdiction of the person and estate of the insane widow, is the one to make an election for her. The court of this state placed the widow under guardianship and appointed a guardian of her person and estate. This court has made an election for her, but how far such election will affect her rights in real estate situated in another state, may be a grave question. This observation, however, may be made: It is generally agreed by writers on the subject, and the rule has frequently been acted on by the courts, that the interpretation and construction of the will belongs to the tribunal of the domicile of the testator. Mr. Justice Story, in his work on the Conflict of Laws, so states the doctrine (§ 491), as does Judge Redfield (1 Redf. on Wills, 396), and other authorities cited by these learned writers, in notes to their texts. It is also true that the administration in the state of the domicile is deemed the principal or primary administration,— the one which can make the final decree for the settlement and distribution of the estate. If administration is granted in another state, it is treated as in its nature ancillary merely, and is generally held subordinate to the principal administration. See Story's Confl. Laws, § 518; *Price v. Mace*, 47 Wis., 23; *Parsons v.*

*Lyman*, 20 N. Y., 103. So, where assets remain in the hands of the ancillary administrator after the satisfaction of all debts in his jurisdiction, they are usually ordered to be sent to the principal administrator for distribution. But real estate is governed by the *lex loci*, and questions in respect to it properly belong to the jurisdiction where it is situated. There may be exceptions to this rule, as the counsel for the executors claim. But suffice it to say, we shall not attempt to define the rights of *Mrs. Washburn* in real estate in other states.

It appears that there is a statute in Minnesota which provides that the surviving wife shall be entitled to, and shall hold in fee simple, an equal undivided one-third of all lands of which her deceased husband was at any time during coverture seized or possessed, free from any testamentary or other disposition thereof to which she shall not have assented in writing, but subject in its just proportion to the payment of debts of the deceased. The respondents' counsel claim that under this statute the widow took, *eo instanti* on the testator's death, an undivided one-third in fee simple, and that this interest in such real estate she now holds, both by descent and by the decree of the Hennepin county probate court. It does, indeed, appear in the case that the probate court of that county made such a decree, from which an appeal was taken, and which is now pending in the appellate court. But the construction of this statute, as well as the question as to what effect must be given the election for the widow made by the probate court, we shall leave for the decision of the supreme court of Minnesota. It may safely be assumed that that able and enlightened tribunal will correctly expound the statute in question, and define the rights of *Mrs. Washburn* under it, and under the decree of the probate court. No doubt it will give to the decision of this court in placing a construction upon this will of Gov. Washburn, and in making an election for the

widow, all the consideration and credit to which it may be entitled, whether upon principles of comity or under the law of Congress. There we leave the matter.

In closing this opinion we must express our admiration at the eminent ability and great research displayed by counsel on both sides in the argument of the cause.

It follows, from the views expressed, that the judgment of the circuit court in construing the provision made in the will for the support of the widow, as well as in the directions to the executors in regard to the execution of their trusts, is erroneous. The judgment is therefore reversed, and the cause remanded, with directions to enter a judgment in accordance with this opinion. It is also ordered that the taxable costs and disbursements on both sides be paid out of the estate.

*By the Court.*— It is so ordered.

Lyon, J. I fully concur in the decision of the court on all the questions determined by it, leading to and including the proposition that the court must make the election whether *Mrs. Washburn* shall take under the will of her late husband, or whether the provision made for her therein be waived in her behalf and she be left to take the interest in his estate given by the statute in such cases. I also agree that all the probabilities are that *Mrs. Washburn* will never recover her reason; and further, that the provisions of the will are amply sufficient to supply all of her wants, and to secure for her the best care and attention during the remainder of her life. Yet I am unable to concur with my brethren in the election made by them that *Mrs. Washburn* take under the will instead of the statute. I think the court should make that election for her which she, were she sane and capable of exercising reasonable judgment, would make for herself. I cannot doubt, in that event, she would elect to waive the provisions made for her in the will, and take

the interest in her late husband's estate which the statute in such case would give her.

I must therefore dissent from the judgment of the court which elects for her that she take under the will.

Upon a motion for a rehearing there was a brief for the respondents, signed by *Cameron, Losey & Bunn*, attorneys, and *William F. Vilas*, of counsel.

The motion was denied February 6, 1884.